[Crim. No. 12953. Third Dist. Sept. 14, 1984.]

THE PEOPLE, Plaintiff and Respondent, v.
RALPH CADDICK, Defendant and Appellant.

**COUNSEL**

Quin Denvir, State Public Defender, under appointment by the Court of Appeal, Charles M. Bonneau and Augustus E. Noland, Deputy State Public Defenders, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, and Robert D. Marshall, Deputy Attorney General, for Plaintiff and Respondent.

**OPINION**

**CARR, J.**—In April 1983, defendant pled guilty to receiving, concealing, and withholding stolen property (Pen. Code, § 496) and was sentenced to state prison for the upper term of three years. He was credited with 66 days presentence time served in county jail (Pen. Code, § 2900.5) and 33 days good behavior and participation credits (Pen. Code, § 4019), for a total credit of 99 days.

Defendant's sole contention on appeal is that he is entitled to one-for-one worktime credit for the 66 days served in county jail, pursuant to Penal Code section 2933. Defendant reasons that had he posted bail and served those 66 days in state prison following conviction, he would have been

entitled to full worktime credit under section 2933. Relying on *People* v. *Sage* (1980) 26 Cal.3d 498, 507 [165 Cal.Rptr. 280, 611 P.2d 874], he urges that it contravenes equal protection of the law to deny him the same credit for presentence time in county jail. Further that denial of one-for-one credit is a violation of due process in that pretrial detainee-felons may forego the right to a trial to avoid serving time for which only limited credit is given. We disagree and shall affirm the judgment.

DISCUSSION

I

Effective January 1, 1983, Penal Code section 2933 permits state prisoners who are engaged in full-time qualifying work, training, or education programs to earn credit against their determinate sentences on a one-for-one basis. Worktime credits may be awarded for performance in work assignments and performance in elementary, high school, or vocational education programs. For every six months of full-time performance in a qualifying program a prisoner shall be awarded worktime credit against his term of imprisonment of six months, or a possible reduction of the sentence by one-half. Any lesser period of continuous performance results in a lesser credit based upon the same ratio. (Pen. Code, § 2933, subd. (a).)

Although every prisoner must be afforded "a reasonable opportunity to participate in a full-time credit qualifying assignment," worktime credit "is a privilege, not a right." (Pen. Code, § 2933, subd. (b).) Credit "must be earned"; a prisoner will not receive the full, one-for-one credit unless he or she *actually participates* in a full-time credit qualifying assignment, even if he or she is willing to accept such an assignment but is not so assigned. (Pen. Code, § 2933, subds. (a) and (b).) Such a person is entitled only to one-for-two credit, or a possible one-third reduction in term.

With the enactment of section 2933, the Legislature eliminated the "good time and participation" credit program under section 2931 for state prisoners who committed crimes after January 1, 1983. (See Stats. 1982, ch. 1234, p. 4551.) Under that program, the Department of Corrections is authorized to reduce a state prisoner's term by one-third for good behavior and participation in work, educational, vocational, therapeutic, or other prison activities. Total possible credit would result in a four-month reduction in sentence for each eight months served, or a reduction based upon this ratio for a lesser period of time. Three of these four months are based upon forebearance from criminal acts or serious disciplinary infractions; one month is allocated on the basis of participation in a qualifying prison program. Section 2931 does not apply to persons who committed crimes on or after January 1, 1983. (Pen. Code, § 2931, subd. (d).) Persons who committed crimes before that date may waive the right to receive credits

under section 2931 and instead be subject to section 2933. (Pen. Code, § 2934.)

At the same time the Legislature enacted section 2933, it amended section 4019 of the Penal Code to permit detainee-felons, like defendant, who are in county jail prior to trial and sentencing to earn good behavior and participation credit against the time spent in county jail. (Stats. 1982, ch. 1234, § 7, p. 4553.) This was done in response to *People* v. *Sage* (1980) 26 Cal.3d 498 [165 Cal.Rptr. 280, 611 P.2d 874].[1] However, such detainee-felons are not entitled to one-for-one worktime credit for the time confined in jail. Instead, presentence detainees, like state prisoners under section 2931 or prisoners under section 2933 who are not assigned to a full-time credit program, are entitled only to a one-third reduction in time served (a one-for-two credit ratio) for good behavior and satisfactory performance of assigned labor. (Pen. Code, § 4019.) Defendant received such credit.

We note that although defendant may have been willing to perform any assigned task, the record does not disclose whether he even worked while in presentence custody, much less in a qualifying full-time program. Even assuming, arguendo, that he was otherwise eligible for such credit, on the record before us he would not be "entitled" under section 2933 to one-for-one worktime credit for his county jail time.

## II

■ Defendant contends that denial of one-for-one credit to presentence detainee-felons contravenes the equal protection of the laws. ■ "The constitutional guaranty of equal protection of the laws has been judicially defined to mean that no person or class of persons shall be denied the same protection of the laws which is enjoyed by other persons or other classes in like circumstances in their lives, liberty and property and in their pursuit of happiness. [Citations.] The concept recognizes that persons similarly situated with respect to the legitimate purpose of the law receive like treatment, but it does not, however, require absolute equality. [Citations.] Accordingly, a state may provide for differences as long as the result does not amount to invidious discrimination. [Citations.]" (*People* v. *Romo* (1975) 14 Cal.3d 189, 196 [121 Cal.Rptr. 111, 534 P.2d 1015].) ■ "As a threshold requirement, it must first be demonstrated that persons *are* similarly situated

---

[1] Added to Penal Code section 4019 is subdivision (a)(4) which states the section is applicable: "When a prisoner is confined in a county jail, industrial farm, or road camp, . . . following arrest and prior to the imposition of sentence for a felony conviction." Subdivision (f), also added, provides: "It is the intent of the Legislature that if all days are earned under this section, a term of six days will be deemed to have been served for every four days spent in actual custody."

with respect to the legitimate purpose of a given law before one can logically proceed with an equal protection analysis." (*In re Strick* (1983) 148 Cal.App.3d 906, 912 [196 Cal.Rptr. 293], original italics.) Accordingly, we address the purpose of section 2933.

From 1917 until 1977, criminal sentencing in California was governed by the Indeterminate Sentence Law. Under that system, the trial court did not fix the term of imprisonment. (See former Pen. Code, § 1168.) Instead, the court imposed "the term prescribed by law," which consisted of a range of time. It was then for the Adult Authority, an agency with the Department of Corrections, to fix the length of time a defendant would actually serve. (See *In re Monigold* (1983) 139 Cal.App.3d 485 [188 Cal.Rptr. 698]; *In re Lynch* (1972) 8 Cal.3d 410, 415 [105 Cal.Rptr. 217, 503 P.2d 921]; *In re Minnis* (1972) 7 Cal.3d 639, 643 [102 Cal.Rptr. 749, 498 P.2d 997].)

The purpose of indeterminate sentencing was primarily rehabilitation. " 'These [indeterminate sentence] laws place emphasis upon the reformation of the offender. They seek to make the punishment fit the criminal rather than the crime. They endeavor to put before the prisoner great incentive to well-doing in order that his will to do well should be strengthened and confirmed by the habit of well-doing.' . . . '*The [Adult] Authority does not fix that period* [of confinement] *pursuant to a formula of punishment, but in accordance with the adjustment and social rehabilitation of the individual* analyzed as a human composite of intellectual, emotional and genetic factors.' " (*In re Minnis, supra,* 7 Cal.3d ,at p. 644, original italics, fns. omitted.) The goal of the law "was to individualize the rehabilitation process, and to use the power to shorten sentences as an incentive to reformation." (*In re Lynch, supra,* 8 Cal.3d at p. 416.)

By the 1970's, the rehabilitative model of indeterminate sentencing had been somewhat discredited. "[W]idespread recognition of the failure and abuses of the rehabilitative ideal was the primary factor in the dismantling of" the indeterminate sentencing system. (Parnas & Salerno, *The Influence Behind, Substance and Impact of the New Determinate Sentencing Law in California* (1978) 11 U.C. Davis L.Rev. 29.) Effective July 1, 1977, the Indeterminate Sentence Law was repealed and replaced by the determinate sentence law. (Stats. 1976, ch. 1139.) By this law, the Legislature completely reversed the purpose of sentencing in California from rehabilitation to punishment, specifically finding and declaring "that the purpose of imprisonment for crime is punishment," and that "[t]his purpose is best served by terms proportionate to the seriousness of the offense with provision for uniformity in the sentences of offenders committing the same offense under similar circumstances." (Pen. Code, § 1170, subd. (a)(1).) Rehabilitation and individualization of sentencing is no longer a dominant purpose of the

sentencing law. (Parnas & Salerno, *op. cit. supra,* 11 U.C. Davis L.Rev. at pp. 29-32.) Sentences are now fixed by the trial court in accordance with statute and within specified discretion. (Pen. Code, § 1170.)

■ The determinate sentence law retained the opportunity for prisoners to have their fixed sentences reduced by good behavior and participation in prison programs (Pen. Code, § 2931), but the purpose of this provision for "good time" credit was primarily to encourage prisoners to conform to prison regulations and refrain from criminal activity in prison, and only secondarily to rehabilitate. (*People* v. *Saffell* (1979) 25 Cal.3d 223 [157 Cal.Rptr. 897, 599 P.2d 92].) As noted, three-fourths of the credit is allocated to good behavior and only one-fourth to participation in work or educational programs. (Pen. Code, § 2931, subds. (b) and (c).)

In 1982, the Legislature declared its intention "that all able-bodied prisoners in the state prisons be directed to work, inasmuch as the performance of productive work on a regular basis is the most appropriate method of successfully instilling in prisoners the values of a law-abiding and cooperative society and will improve the possibility of their reintegration into that society." (Stats. 1982, ch. 1, § 1, p. 1.) The Legislature declared the additional goal of achieving the self-sufficiency of the prison system. (*Ibid.*) The Legislature directed "the development of prisoner labor and skills to provide the necessities of the prisons, to teach marketable skills, good work habits, and goal orientation to prisoners, and to reduce the amount by which the prisons must be supported by taxes and thus also benefit the public at large." (*Ibid.*)

Thereafter, the Legislature abandoned the "good time" credit system for state prisoners and replaced it with the one-for-one credit system for participation in full-time work or education programs under section 2933. (Stats. 1982, ch. 1234, § 4, p. 4551.) ■ Section 2933 advances the Legislature's intent to instill marketable skills and good work habits in prisoners to facilitate their rehabilitation and reintegration into society and achieve prison self-sufficiency.

Rehabilitation as an object of imprisonment has to an extent been restored by section 2933. However, rehabilitation is no longer achieved directly through the fixing of sentences. Under indeterminate sentencing, the possibility of a short sentence theoretically provided a direct "incentive" to behave well; a showing of reformation would lead to a shorter sentence. (See *In re Lynch, supra,* 8 Cal.3d at pp. 416-417.) Now rehabilitation is not a goal of sentencing per se. Even under section 2933, it is the Legislature's intent that prisoners serve the sentence imposed by law. (§ 2933, subd. (a).) Instead, rehabilitation is to be accomplished through specific full-

time work and education programs designed to instill the skills necessary for productive citizenship and to achieve prison self-sufficiency, *incident* to which prisoners may, as a privilege, have their fixed sentences reduced in accordance with a specific statutory formula. The possibility of reduced sentences provides an incentive to participate in rehabilitative programs, though it no longer specifically provides an incentive to "behave well."

██ Pretrial detainee-felons and state prison inmates are not similarly situated with respect to the purposes of section 2933 to rehabilitate prisoners and achieve prison self-sufficiency. Pretrial detainee-felons are presumptively innocent and therefore not in need of rehabilitation; prison inmates are conclusively guilty and presumptively in need of rehabilitation. In many cases, the pretrial detainee may make bail at any time, thereby interfering with any continual work or education program set up for his rehabilitation; prison inmates will be constantly present for a determinable period, a circumstance clearly conducive to any rehabilitation program. Pretrial detainees have court appearances; they consult with their attorneys and other experts their cases may require. This makes a continual work rehabilitation or education program impractical; obviously such interruptions are not a concern for prison inmates. Moreover, the Legislature has not declared its intent to achieve self-sufficiency in the county jails. While the foregoing distinctions are not exhaustive of the differences between the two classes, they are sufficient to demonstrate that the classes are not similarly situated.[2] To grant worktime credit without actual involvement in a work incentive or education program would substantially undermine the purposes of section 2933. Accordingly, prison inmates and presentence detainees are not similarly situated *with respect to the purpose of the law.*[3]

---

[2]Similar reasons were rejected by the Supreme Court in *People* v. *Sage, supra,* 26 Cal.3d 498, as justifications for a distinction between detainee-felons and state prison inmates. (At pp. 507-508.) However, at that time detainees were given no presentence *conduct* credit and the issue was whether it was constitutional to award *conduct* credit to prison inmates but not to presentence detainee felons. Moreover, misdemeanants who served sentences in county jail *were* given conduct credit. As the reasons advanced by the People might also have been given for denying conduct credit to misdemeanants as well as presentence detainee-felons, the court concluded the challenged distinction was obviously not based upon those reasons. (*Ibid.*)

In this case, since the primary purpose of section 2933 is rehabilitation through full-time work, the challenged distinction is related to the legitimate purpose of the law, and the reasons outlined above justify the distinction.

[3]In *People* v. *Davis* (1984) 154 Cal.App.3d 253 [201 Cal.Rptr. 422], the court found the worktime credit of one-for-one provided by Penal Code section 2933 was not applicable to pretrial detainees as the language of the statute expressly limited such worktime credit to prison inmates. We perceive that the terms prison inmates and pretrial detainees are more than labels which define the difference between persons who have been convicted of a felony and sentenced and those who have simply been charged with felony. The status defined by the terms prison inmates and pretrial detainees describes the differences between the two classes of persons. Moreover, we may judicially notice that county jail systems are unable to provide the work and education programs for pretrial detainees contemplated by Penal Code section 2933.

## III

 Defendant further argues that depriving pretrial detainee felons of the one-for-one work credit ratio violates due process because it has a "chilling effect" on their choice as to whether they should invoke their constitutional right to trial. If they choose to go to trial, inevitably they must spend longer in presentence custody at the less favorable credit ratio of one-for-two.

The argument lacks persuasiveness. It is true that the accused who invokes his right to trial and is convicted and sentenced to state prison will serve slightly longer than his counterpart who serves all of his time in state prison. However, the difference in all but the most unusual cases will be at most a few months. It is simply not realistic to anticipate that detainee-felons will forego their right to a trial, with its potential for acquittal or conviction of a lesser offense, in order to become eligible for a state prison work program and its concomitant reduction of a few months in their sentence.

The judgment is affirmed.

Sparks, J., concurred.

**BLEASE, Acting P. J.**—I concur in the result.

I concur in the result because the defendant was subject to the same criteria for credit in prison as in jail. So far as the record in this case is concerned, the defendant was not assigned to and did not do any work as a pretrial detainee. It is conceded that he received the one-third credit provided by Penal Code section 4019. That is the identical credit he would receive under Penal Code section 2933 as a prison inmate for whom no work is available. It provides: if a prison inmate "is . . . not assigned to a full-time [work] assignment . . . [he] shall receive no less credit than is provided under Section 2931," to wit a maximum one-third credit. Thus, a pretrial detainee without work is entitled to the same credit as a prison inmate without work. That, of course, poses no equal protection problem.

I do note an odd twist in the strands of equal protection theory. In *People* v. *Saffell* (1979) 25 Cal.3d 223 [157 Cal.Rptr. 897, 599 P.2d 92] the (MDSO) inmate was not entitled to equal credit because he was subject to

rehabilitation. In this case the majority say the pretrial detainee is not entitled to equal credit because he is not subject to rehabilitation.