[No. S103581. Apr. 3, 2003.]

In re PAMELA C. MARTINEZ on Habeas Corpus.

COUNSEL

Elizabeth A. Courtenay, under appointment by the Supreme Court, for Petitioner Pamela C. Martinez.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Paul D. Gifford, Assistant Attorney General, Susan Duncan Lee, Matthew D. Mandelbaum and Diann Sokoloff, Deputy Attorneys General, for Respondent the People.

OPINION

**BROWN, J.**—The Penal Code provides that inmates in county jails and state prisons may have their sentences reduced as a reward for their conduct, including work and good behavior. The rate at which inmates accrue credit depends on numerous factors, including whether the confinement is presentence or postsentence. A jury convicted petitioner, her conviction was reversed, and she then pleaded guilty. She now contends her state prison confinement prior to the reversal must be characterized as presentence for credit accrual purposes.

In *People v. Buckhalter* (2001) 26 Cal.4th 20 [108 Cal.Rptr.2d 625, 25 P.3d 1103] (*Buckhalter*), we held that a petitioner who is serving a state prison sentence and is remanded for resentencing retains *postsentence* status for credit accrual purposes. (*Id.* at pp. 40-41.) We expressly declined to "consider the proper credit treatment of one who spends time in custody after his *convictions* have been reversed on appeal, thus setting the entire matter at large." (*Id.* at p. 40, fn. 10.) We now face the question left unanswered in *Buckhalter.* We conclude petitioner's prereversal prison time ought not be viewed as presentence custody, and her credit accrual should be calculated in accordance with her ultimate postsentence status.

## I. PROCEEDINGS BELOW

Petitioner was taken into custody on February 11, 1995. A jury convicted her of petty theft with priors (Pen. Code, § 666),[1] and determined she had two prior strikes within the meaning of sections 667 and 1170.12. On July 9, 1996, the trial court sentenced petitioner to a state prison sentence for 25 years to life pursuant to the three strikes law. On July 9, 1999, petitioner obtained a reversal of her conviction on habeas corpus review due to her receiving ineffective assistance from trial counsel. On August 19, 1999,

---

[1]All further statutory references are to the Penal Code.

petitioner pleaded guilty to the underlying charge, and the trial court dismissed one of her prior strikes.

For convenience we designate four distinct phases of this history. Phase I is the period from the initial arrest to the initial sentencing, which in this case continued from February 11, 1995, until July 9, 1996. Phase II is the period from the initial sentencing to the reversal (July 9, 1996, through July 9, 1999). Phase III is the period from the reversal to the second sentencing (July 9, 1999, until Aug. 19, 1999), and phase IV is the period after the second and final sentencing (after Aug. 19, 1999). The parties do not dispute that petitioner should accrue credits as a presentence inmate for phases I and III (see § 4019), and they likewise agree that petitioner should accrue credits as a postsentence second striker for phase IV. The dispute lies in the characterization of the three-year phase II status.

The trial court resentenced petitioner on August 19, 1999, after she had pleaded guilty. The court recalculated the entire period prior to August 19, 1999 (phases I, II and III), as presentence time, granting petitioner conduct credit for 50 percent of her actual custody time. Under this theory, petitioner's phase II credit accrual (up to 50 percent pursuant to § 4019, subd. (f)) is based on her phase III status as a presentence inmate.

The trial court again resentenced petitioner on April 17, 2001.[2] The court granted petitioner credit under the presentence section 4019 formula for phases I and III, and granted petitioner conduct credit in accordance with the limitations expressed in sections 667, subdivision (c)(5) and 1170.12, subdivision (a)(5) for phases II and IV. This sentencing based petitioner's phase II status on her ultimate phase IV status as a recidivist with one prior strike.

The Court of Appeal endorsed the 1999 sentencing position, reasoning that the reversal of petitioner's conviction meant the initial conviction ceased to exist. Accordingly, petitioner could not have been a postsentence inmate during phase II because there was no valid conviction and sentence in existence. The Attorney General petitioned for review, implicitly asserting the April 17, 2001, resentencing was correct. We granted review, and now reverse the decision of the Court of Appeal.

---

[2] The April 17, 2001, abstract of judgment states petitioner's custody commenced on May 19, 1995, although it appears her custody actually commenced on February 11, 1995. The abstract of judgment's custody calculations, however, reflected the number of days served (515) since February 11.

## II. ANALYSIS

### A. *Section 2900.1*

Our analysis begins with section 2900.1: "Where a [petitioner] has served any portion of his sentence under a commitment based upon a judgment which judgment is subsequently declared invalid or which is modified during the term of imprisonment, such time shall be credited upon any subsequent sentence he may receive upon a new commitment for the same criminal act or acts." No case interpreting section 2900.1 has squarely addressed whether the "time" that "shall be credited" under the statute is presentence or postsentence.

In *In re James* (1952) 38 Cal.2d 302 [240 P.2d 596] (*James*), the petitioner pleaded guilty in December 1944 to first degree murder and was sentenced to life imprisonment. (*Id.* at p. 308.) In January 1952, we determined the plea had been invalid, and reversed the conviction. (*Id.* at p. 313.) We explained that if the People obtained a conviction for manslaughter on retrial (having apparently agreed not to retry James for murder), he would be entitled to credit for the more than seven years of actual confinement. Furthermore, because we implicitly deemed this confinement postsentence, rather than characterizing it as presentence, we noted James would be eligible for conduct credit pursuant to the postsentence credit statute. (*Id.* at p. 314.)[3] We also declined to compute James's prereversal credits in accordance with his prereversal status as a life prisoner, which would have rendered him ineligible to accrue credits against a fixed term. (See *In re Bentley* (1974) 43 Cal.App.3d 988, 995 [118 Cal.Rptr. 452].)

Since *James* did not expressly analyze the question, its result does not control our decision. Nonetheless, the literal terms of the relevant statutes appear in accord with the result in *James*. Section 4019, subdivision (a)(4), which petitioner contends should apply, applies to someone "confined in a county jail . . . following arrest and prior to the imposition of sentence for a felony conviction." By contrast, section 2933, subdivision (a), applies to "persons convicted of a crime and sentenced to state prison." Phase II occurred after petitioner was convicted of a crime, and that confinement was

---

[3]The extant credit scheme authorized conduct credits of up to five days per month for county jail inmates (Stats. 1941, ch. 106, § 15, pp. 1122-1123 [adding § 4019]), whereas state prisoners could earn two months of conduct credit per year for the first two years of confinement, four months per year for the next two years, and five months per year thereafter. (Stats. 1941, ch. 106, § 15, pp. 1105-1106 [adding § 2920].) These statutes were repealed and replaced with more generous conduct credit accrual provisions with the advent of determinate sentencing. (See Stats. 1976, ch. 286, §§ 3, 4, pp. 595-596; Stats. 1977, ch. 165, §§ 36, 37, p. 661.)

served in state prison, not a local jail. Nevertheless, petitioner offers several arguments contending the time she served during phase II should be characterized as presentence pursuant to section 4019.[4] Although petitioner's arguments have some superficial appeal, we find them ultimately unpersuasive.

### B. Postsentence Status Is Not a "Credit Disability"

■ Since *James*, the Legislature has instituted determinate sentencing and created a complex array of presentence and postsentence credit schemes to serve various functions. As we observed in *Buckhalter*, this complexity " ' "is likely to produce some incongruous results and arguable unfairness when compared to a theoretical state of perfect and equal justice. [Because] there is no simple or universal formula to solve all presentence credit issues, our aim [must be] to provide . . . a construction [of the statutory scheme] which is faithful to its language, which produces fair and reasonable results in a majority of cases, and which can be readily understood and applied by trial courts." ' " (*Buckhalter, supra,* 26 Cal.4th at p. 29, quoting *People v. Bruner* (1995) 9 Cal.4th 1178, 1195 [40 Cal.Rptr.2d 534, 892 P.2d 1277], quoting *In re Joyner* (1989) 48 Cal.3d 487, 495 [256 Cal.Rptr. 785, 769 P.2d 967].)

■ Petitioner contends she should not be subject to what she describes as the "credit disability" of postsentence status in light of the subsequent reversal. Petitioner's argument focuses on the disadvantage (through reduced conduct credit) that she suffers by having her phase II time deemed postsentence time. It is not self-evident, however, that postsentence status is an inherent disability. Whether a petitioner fares better "presentence" or "postsentence" will vary, depending on the nature of the commitment offense and the petitioner's history. A nonviolent offender may receive a credit up to 50 percent of her actual presentence confinement. (§ 4019.) If she has no prior strikes, she may earn 100 percent credit postsentence (one day of conduct credit for each day actually served) (§ 2933, subd. (a)), whereas a recidivist with a prior strike may earn postsentence credits only up to 20 percent of the total prison sentence (§§ 667, subd. (c)(5), 1170.12, subd. (a)(5)), and an offender with two prior strikes is denied *any* postsentence conduct credit. (*In re Cervera* (2001) 24 Cal.4th 1073, 1076 [103 Cal.Rptr.2d 762, 16 P.3d

---

[4]The parties' dispute concerns phase II time only; we therefore need not express any opinion as to the proper characterization of phase III time.

176].)[5] Thus, the negative consequences of postsentence status are linked to petitioner's recidivist status.[6] If petitioner had no prior strikes, she would fare better with postsentence status and would probably object if her reversal prompted a recharacterization of her prison custody as presentence time, limiting her conduct credit to 50 percent of her actual custody time.

As we observed in *Buckhalter*, "the pre- and postsentence credit systems serve disparate goals and target persons who are not similarly situated. The presentence credit scheme, section 4019, focuses primarily on encouraging minimal cooperation and good behavior by persons temporarily detained in local custody before they are convicted, sentenced, and committed on felony charges. By contrast, the worktime credit scheme for persons serving prison terms emphasizes penological considerations, including the extent to which certain classes of prisoners, but not others, deserve or might benefit from incentives to shorten their terms through participation in rehabilitative work, education, and training programs . . . ." (*Buckhalter*, *supra*, 26 Cal.4th at p. 36.) These considerations have shaped the distribution of postsentence credit: The Legislature has determined that offenders with no prior strikes are the most amenable to rehabilitation, and they thus earn the most credits. Offenders with one prior strike receive reduced postsentence credit, and those with two prior strikes, considered the least amenable to rehabilitation, receive none at all.

The Legislature has thus enacted the current scheme to ensure a petitioner's credit accrual is commensurate with her status. This may produce occasional incongruities. For example, granting more credits to postsentence inmates may inadvertently reward offenders who post bail or plead guilty quickly (see, e.g., *In re Cleaver* (1984) 158 Cal.App.3d 770, 773-775 [204 Cal.Rptr. 835]), whereas favoring presentence inmates may similarly reward offenders who do not post bail or who go to trial (*People v. Applin* (1995) 40 Cal.App.4th 404, 408, 411 [46 Cal.Rptr.2d 862]). These occasional disparities have not been fatal.

C.  *Petitioner Is Not Entitled to the Same Credits as an Inmate Awaiting Trial*

Petitioner contends that during phase II she was similarly situated to a petitioner who had not yet gone to trial. She asserts that she should be no

---

[5]Some individuals accrue conduct credit at the same rate for both their presentence and postsentence custody. Violent felons receive the same 15 percent credit (§ 2933.1, subd. (a)), and convicted murderers receive no credit at all (§ 2933.2, subd. (a)).

[6]Although a pretrial detainee is presumed innocent until proven guilty, this does not, as shown above, necessarily entitle a petitioner to more favorable credit provisions. In any event, petitioner was convicted on December 11, 1995, and thus eight of the 17 months of presentence custody elapsed after her conviction.

worse off for having suffered a later reversed conviction than would be a hypothetical petitioner who simply had her trial delayed for a comparable period of time. She compares herself with pretrial detainees, and argues she should receive the same two-for-four conduct credits.

A pretrial detainee is not similarly situated to a state prison inmate. (*Buckhalter, supra*, 26 Cal.4th at p. 36; *People v. Caddick* (1984) 160 Cal.App.3d 46, 53 [206 Cal.Rptr. 454].) "Pretrial detainee-felons are presumptively innocent and therefore not in need of rehabilitation; prison inmates are conclusively guilty and presumptively in need of rehabilitation. In many cases, the pretrial detainee may make bail at any time, thereby interfering with any continual work or education program. . . . Pretrial detainees have court appearances; they consult with their attorneys and other experts their cases may require. This makes continual work rehabilitation or education [programming] impractical; obviously such interruptions are not a concern for prison inmates. Moreover, the Legislature has not declared its intent to achieve self-sufficiency in the county jails. While the foregoing distinctions [do not exhaust] the differences between the two classes, they are sufficient to demonstrate that the classes are not similarly situated." (*Caddick*, at p. 53, fn. omitted.) Accordingly, "the terms prison inmates and pretrial detainees are more than labels which define the difference between persons who have been convicted of a felony and sentenced and those who have simply been charged with [a] felony." (*Ibid.*, fn. 3.) These contrasting functions of confinement warrant the treatment of petitioner's phase II custody as postsentence.

Furthermore, petitioner's proposal to recharacterize her phase II confinement as presentence time would arguably create an equal protection problem even worse than that to which petitioner objects. Suppose a jury convicts two defendants, each of whom has a prior strike, of the same first degree burglary (§§ 459, 460), and imposes the upper base term of six years (§ 461) on each. If there are no errors with A's trial, his first four years of postsentence custody will yield A *one year* of conduct credit. (§§ 667, subd. (c)(5), 1170.12, subd. (a)(5).) By contrast, if, after the same four-year period, a reviewing court finds the trial court improperly denied B's motion for self-representation, petitioner's theory would grant B two years of credit for this time (§ 4019), even though the exact same evidence was presented against each codefendant.[7]

D. *Petitioner's Credits Are Not Based on an Incorrect Judgment*

Finally, petitioner contends her credit accrual should not be based on an incorrect initial judgment, and should be corrected to apply retroactively to

---

[7]We further note that our hypothetical is more likely to create great disparities than petitioner's. Few defendants will spend several years in pretrial custody. Contrariwise, prisoners often obtain reversal years after their initial conviction.

her phase II confinement. But her subsequent plea confirms that her initial conviction, although procedurally invalid, was not without legal basis. On the contrary, she pleaded guilty to the charged offense, and thus does not warrant disparate treatment from a petitioner who initially received an error-free judgment.

Petitioner objects to characterizing her phase II custody as postsentence "retroactively," based on her subsequent guilty plea. But her entire claim depends on our willingness to recharacterize her phase II custody retroactively, i.e., after her reversal. We agree that petitioner's phase II time may be recharacterized. Our recharacterization analysis, however, does not cease with her reversal, but also includes her eventual reconviction.

Petitioner derives some benefit, however, from our recharacterization. She was sentenced initially as a third striker, which would have rendered her ineligible to earn any postsentence conduct credits, as in *James*, *supra*, 38 Cal.2d 302. She ultimately pleaded guilty as a second striker, eligible to earn postsentence conduct credit up to 20 percent of the total prison sentence. Because we follow petitioner's ultimate phase IV status, we conclude that during her phase II confinement, she was entitled to earn credits under the 20 percent formula described above.[8]

## CONCLUSION

It is petitioner's ultimate phase IV status as a convicted second striker, not her unresolved phase III status as presentence petitioner, nor her initial phase II status as a convicted third striker, that must control the determination of her phase II credits. Petitioner pleaded guilty as having one prior strike, and she thus is entitled, for her phase II confinement, to a maximum conduct credit of 20 percent of her total prison sentence.

We therefore reverse the judgment of the Court of Appeal. The matter is remanded to the Court of Appeal with instructions to direct the trial court to sentence petitioner in accordance with the April 17, 2001, sentencing. The trial court should clarify the date on which petitioner's custody commenced. Calculation of the actual days of conduct credit earned by petitioner during her phase II and phase IV confinements should be left to prison authorities. (See *Buckhalter, supra,* 26 Cal.4th at pp. 30-31, 40-41.)

George, C. J., Baxter, J., Chin, J., and Moreno, J., concurred.

---

[8]Neither the People nor the petitioner asserts the initial sentencing of petitioner as a "third striker" should control her credit accrual for that period. If petitioner were denied all conduct credit due to the initial conviction, it could create an equal protection problem against a hypothetical petitioner who initially pleaded guilty to having one prior strike and thus received 20 percent conduct credits for her entire confinement.

**KENNARD, J.**—I dissent.

Petitioner Pamela C. Martinez pleaded guilty to the crime of petty theft (Pen. Code, §§ 485, 488).[1] Because of her prior convictions, the offense was treated as a felony (see § 666), and she was sentenced to state prison. After spending more than six and a half years in custody for this petty theft, petitioner was released from prison to begin rebuilding her life. Because the majority concludes that she has not served enough time, presumably petitioner will now be taken into custody and returned to prison.

The issue before this court is the correct interpretation and application of certain provisions of the California Penal Code governing credits that a detainee or inmate may earn for good behavior and participation in qualifying work programs (collectively referred to as conduct credits) while in custody. These credits are applied against a penal sentence to shorten its length. The Penal Code sets several different rates at which these conduct credits may be earned, depending on the inmate's crime, criminal record, and sentence and also, of particular importance here, on whether the custody time during which the credits were earned occurred before or after the pronouncement of sentence. Briefly stated, the majority concludes that time spent in prison *before* pronouncement of a sentence should be treated, in the eyes of the law, as having occurred *after* that sentence. I disagree. In this instance, as in most instances, the simple and obvious answer is the correct one: Presentence means before the sentence, and postsentence means after the sentence. Therefore, in my view, the time petitioner spent in prison *before* pronouncement of sentence is *presentence* time, not *postsentence* time, for purposes of computing conduct credits.

Only a few facts need be stated. In February 1995, petitioner was arrested. In July 1996, after a jury trial that resulted in a conviction for petty theft, petitioner was sentenced to prison and immediately began to serve that sentence. Petitioner challenged the validity of her conviction by petitioning for a writ of habeas corpus, and, in July 1999, the Court of Appeal set aside petitioner's conviction and ordered a new trial. On August 19, 1999, petitioner pleaded guilty to petty theft with a prior conviction, and the court sentenced her to state prison for a term of nine years.

An issue then arose about petitioner's entitlement to conduct credits for the three years she spent in prison from July 1996 and July 1999 under the invalid judgment. Petitioner's entitlement to some credit for this period was beyond dispute. Section 2900.1 declares that time spent serving a sentence under a judgment later declared invalid "shall be credited upon any subsequent sentence [the defendant] may receive upon a new commitment for the

---

[1]Further statutory references are to the Penal Code.

same criminal act or acts." Likewise, it was not disputed that she had earned conduct credits by her behavior in prison. Rather, the issue was the *rate* at which the conduct credits accrued. The superior court concluded that the credits should accrue at the *postsentence* rate of 20 percent under sections 667, subdivision (c)(5), and 1170.12, subdivision (a)(5). The Court of Appeal disagreed, concluding instead that the credits accrued at the *presentence* rate of 50 percent under sections 2900.5 and 4019.

The majority agrees with the superior court that the three years petitioner spent in prison *before* July 1999 is *postsentence* time for purpose of calculating conduct credits against her *August 1999 sentence*. How does the majority arrive at a conclusion so implausible on its face?

The majority begins with a 1952 decision of this court in a habeas corpus proceeding setting aside a first degree murder conviction: *In re James* (1952) 38 Cal.2d 302 [240 P.2d 596]. At the end of the opinion in *James*, after determining that the petitioner's conviction was invalid, this court noted that the petitioner was "still subject to trial," and that if he was convicted after a new trial "his confinement based upon the invalid 1944 judgment, together with any time credits for good conduct earned thereon (Pen. Code, § 2920), would be credited upon the new sentence for the same criminal act. (Pen. Code, § 2900.1.)" (*In re James, supra,* at p. 314.)

Although conceding that *James* "did not expressly analyze the question" and therefore does not control here, the majority professes to find significance in this court's reference, in the passage quoted above, to former section 2920, which the majority triumphantly states is "the *postsentence* credit statute." (Maj. opn., *ante,* at p. 33, italics added.) What the majority does not point out is that in 1952, when this court decided *James*, there was no presentence conduct credit statute in existence. The Legislature enacted the first presentence credit statute in 1971 (Stats. 1971, ch. 1732, § 2, p. 3686), but even then the Penal Code made no provision for presentence *conduct* credits for persons convicted of felonies. Such credits were first authorized by this court's decision in *People v. Sage* (1980) 26 Cal.3d 498 [165 Cal.Rptr. 280, 611 P.2d 874], later codified in section 4019, subdivision (a)(4). Thus, unlike this case, *James* was not a situation in which this court was required to choose between presentence and postsentence conduct credit statutes. Rather, in referring to section 2920, this court was citing the only conduct credit statute then in existence for persons convicted of felonies and sentenced to state prison. For this reason, *In re James, supra,* 38 Cal.2d 302, is no help in making the choice this court faces today between presentence and postsentence conduct credit statutes to determine the rate at

which petitioner's conduct credits accrued for the time she spent in prison before the valid conviction and sentence.

The majority next asserts that "the literal terms of the relevant statutes appear in accord with the result in *James*." (Maj. opn., *ante*, at p. 33.) The majority explains its reasoning this way: "Section 4019, subdivision (a)(4), which petitioner contends should apply, applies to someone 'confined in a county jail . . . following arrest and prior to the imposition of sentence for a felony conviction.' By contrast, section 2933, subdivision (a), applies to 'persons convicted of a crime and sentenced to state prison.' [The time in question here] occurred after petitioner was convicted of a crime, and that confinement was served in state prison, not a local jail." (Maj. opn., *ante*, at pp. 33-34.) I do not agree. The terms of the presentence credit statutes, *as construed by the courts of this state*, do indeed authorize credit for the prison custody time at issue here.

As relevant here, section 2900.5, subdivision (a), states: "In all felony . . . convictions . . . when the defendant has been in custody, including, *but not limited to*, any time spent in a jail, camp, work furlough facility, halfway house, rehabilitation facility, hospital, prison, juvenile detention facility, or similar residential institution, all days of custody of the defendant, including days served as a condition of probation in compliance with a court order, *and including days credited to the period of confinement pursuant to Section 4019*, shall be credited upon his or her term of imprisonment . . . ." (Italics added.) Presentence credits are awarded under section 2900.5 "regardless of the particular locale, institution, facility or environment of [the defendant's] incarceration." (*In re Watson* (1977) 19 Cal.3d 646, 651-652 [139 Cal.Rptr. 609, 566 P.2d 243].) Under section 2900.5, in August 1999, when petitioner received a nine-year prison sentence for petty theft, she was entitled to credit, including conduct credit under section 4019, for all previous custody time attributable to the same act of petty theft, including the time in state prison under the earlier invalid judgment.

Section 4019, subdivision (a)(4), authorizes presentence conduct credit at the 50 percent rate for time spent "confined in a county jail, industrial farm, or road camp, or a city jail, industrial farm, or road camp following arrest and prior to the imposition of sentence for a felony conviction." Although section 4019 does not mention state prisons, it is settled that presentence credit may be awarded under section 4019 for time spent in state facilities, including prisons, before pronouncement of sentence for a felony conviction. (See *People v. Buckhalter* (2001) 26 Cal.4th 20, 30, fn. 6 [108 Cal.Rptr.2d 625, 25 P.3d 1103]; *In re Anderson* (1982) 136 Cal.App.3d 472, 476 [186

Cal.Rptr. 269].) Thus, the wording of the presentence credit statutes, sections 2900.5 and 4019, provides the majority no basis to treat petitioner's time in state prison before she was validly convicted and sentenced as anything other than presentence time.

The majority argues that petitioner's state prison time must be characterized as postsentence time because " 'prison inmates are conclusively guilty and presumptively in need of rehabilitation.' " (Maj. opn., *ante*, at p. 36, quoting *People v. Caddick* (1984) 160 Cal.App.3d 46, 53 [206 Cal.Rptr. 454].) This is a fair statement as applied to prison inmates who have been validly convicted, but an *invalid* conviction does not conclusively determine guilt nor does it establish a presumptive need of rehabilitation. Until a valid conviction is obtained, all persons accused of crime are equally entitled to a presumption of innocence and thus similarly situated for purposes of credit statutes.

The majority suggests that characterizing petitioner's presentence state prison time as presentence time for purposes of computing conduct credits "would arguably create an equal protection problem" because she would have more presentence time, and thus more conduct credits, than a defendant whose initial conviction and sentence for the very same offense were not invalid. (Maj. opn., *ante*, at p. 36.) Yet, as the majority elsewhere acknowledges (*id.* at p. 35), these sorts of "incongruities" are inevitable and have not been thought sufficient to invalidate the entire credit scheme. (*In re Joyner* (1989) 48 Cal.3d 487, 495 [256 Cal.Rptr. 785, 769 P.2d 967].) Defendants convicted of the very same crime may have presentence custody times of widely differing length. One defendant may promptly plead guilty and have very little presentence time. Another may be validly convicted after jury trial and have significantly more presentence time. A third may be validly convicted only after two or three trials because the earlier trials terminated by the granting of a motion for mistrial, or because the trial court granted a motion for a new trial, or because the initial conviction was reversed on appeal. A fourth defendant may be validly convicted after one or more jury trials, be granted probation on conditions including substantial jail time, and later have probation revoked and a state prison sentence imposed. So long as the law sets different rates for accrual of presentence and postsentence custody credits, these defendants, all guilty of the same crime and sentenced to the same term, but with widely varying periods of pretrial custody, will have significantly different overall times of actual confinement.

I agree with the Court of Appeal here that in calculating conduct credits against petitioner's nine-year state prison sentence pronounced in August

1999 for the crime of petty theft, all earlier periods of custody attributable to that petty theft, including the three years petitioner spent in state prison under an invalid conviction for the same crime, is presentence time. Accordingly, I would affirm the Court of Appeal's judgment.

Werdegar, J., concurred.

Petitioner's petition for a rehearing was denied June 18, 2003, and on June 20, 2003, the opinion was modified to read as printed above. Kennard, J., and Werdegar, J., were of the opinion that the petition should be granted.