Filed 7/29/14  P. v. Jones CA2/5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE, | B250726 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BA382185) |
| v. | |
| RAVON JONES, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Craig Richman, Judge.  Affirmed with directions.

Catherine White, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Victoria B. Wilson, Supervising Deputy Attorney General, and Mark E. Weber, Deputy Attorney General, for Plaintiff and Respondent.

————————————

Pursuant to a case settlement agreement, defendant and appellant Ravon Jones entered a plea of no contest in count 1 to evading an officer (Veh. Code, § 2008.2, subd. (a)) and in count 2 of indecent exposure (Pen. Code, § 314).[1]  Defendant also admitted he had suffered a prior serious or violent felony conviction within the meaning of the three strikes law (§§ 667, subds. (b)-(i), 1170.12, subds. (a)-(d)).  The trial court dismissed another open case against defendant (No. BA382107)[2] pursuant to the plea agreement. The court denied probation and sentenced defendant to the high term of three years on count 1 and eight months on count 2 (one third of the middle term), both doubled as a result of the strike prior conviction, for a total of seven years four months in state prison. Defendant was ordered to pay $110 in attorney fees pursuant to section 987.8, in addition to other fines.

On appeal, this court conditionally reversed and remanded to the trial court to allow defendant to present any complaints regarding trial counsel in a *Marsden*[3] hearing (*People v. Jones* (Dec. 18, 2012, B236963) [nonpub. opn.]).  Any claim of ineffective assistance of counsel was to be resolved at the *Marsden* hearing.  (*Ibid.*)  This court also reversed the trial court's order directing defendant to pay $110 in attorney fees and remanded for the court to provide notice and a hearing under section 987.8, subdivision (b) concerning his ability to pay attorney fees.  (*Ibid.*)

Defendant argues that upon remand that the trial court erred in denying his *Marsden* motion and refusing to consider his ineffective assistance of counsel claims. This court requested briefing regarding presentence credits and attorney fees, which the parties also addressed.

---

[1] Unless otherwise indicated, all statutory references are to the Penal Code.

[2] Defendant was charged with indecent exposure (§ 314) based on the preliminary hearing testimony of a librarian who saw him masturbating on a stairway landing in the library.

[3] *People v. Marsden* (1970) 2 Cal.3d 118, 124-125.

We conclude that the trial court did not abuse its discretion in denying defendant's *Marsden* motion and direct the court to correct the errors in the abstract of judgment in conformance with our opinion. In all other respects, the judgment is affirmed.

## FACTS

### Circumstances of Defendant's Arrest[4]

On the morning of March 15, 2011, a witness reported observing defendant masturbating in a grocery store parking lot. Los Angeles Police Officers Pelczar and Mateus responded to the scene in a marked police car. Officer Pelczar was in uniform. The officers spotted defendant, who matched the description the witness had given, driving a car consistent with the vehicle the witness had described. When the officers began to follow him, defendant accelerated to a speed of 20-30 miles per hour in disregard of the safety of people walking in the parking lot. Defendant stopped his vehicle facing the officers, who activated the patrol car's lights and sirens. Officer Pelczar got out of the patrol car, made eye contact with defendant, and yelled for him to stop. In response, defendant put his car in reverse and left the parking lot. He accelerated to approximately 50 miles per hour, ran a red light, and abandoned his vehicle in an alley. He was found in a crawlspace. The witness identified defendant as the man who had been masturbating.

---

[4] Because defendant entered pleas of no contest, the facts are drawn from the preliminary hearing transcript.

*Marsden* **Hearing**[5]

On May 9, 2013, the trial court held a *Marsden* hearing following remand by this court in our opinion in defendant's first appeal. Defendant identified five grounds for making his *Marsden* motion: (1) defendant was on psychiatric medication when he entered his plea and was not in his right state of mind; (2) counsel failed to file a motion to withdraw defendant's plea; (3) counsel failed to investigate the underlying facts of the case and hire an investigator to interview witnesses; (4) counsel failed to file a motion for exculpatory evidence under *Brady v. Maryland* (1963) 373 U.S. 83, which defendant claimed would have required the prosecution to produce his DNA samples and a videotape of him "committing the crime;" and (5) counsel failed to file a motion to suppress (§ 1538.5) the videotape, DNA samples and an arrest warrant, on a theory that there was no probable cause for his arrest. [6]

On the issue of medication, defendant complained that counsel failed to subpoena Dr. Knapke to testify about the psychiatric medication he claimed to be taking and its side effects at the August 15, 2011 hearing. On May 18, 2011, Dr. Knapke conducted a

---

[5] Deputy Public Defender Rigoberto Arrechiga was defendant's counsel in the case he entered a plea of no contest to two counts, and Deputy Public Defender David Kanuth was defendant's counsel in the case that was dismissed pursuant to the plea agreement. Arrechiga was responsible for negotiating the plea agreement that settled both cases for defendant. By the time of the sentencing hearing, Arrechiga had been transferred, so Kanuth appeared for defendant. When the *Marsden* hearing took place after defendant's initial appeal in this case, Kanuth had left the Public Defender's Office and no longer represented defendant. Defendant had new counsel, but both Kanuth and Arrechiga were present at the *Marsden* hearing and responded throughout the hearing to defendant's allegations.

[6] Defendant's allegation that he was inadequately represented by his trial counsel is solely directed at Kanuth. The defendant stated, "This *Marsden* hearing is not on you Rigoberto. This is on David Kanuth." The court then asked, "So you feel that Mr. Arrechiga . . . did everything that you asked him to do; is that correct? He adequately represented you?" And defendant answered, "Well, he don't have nothing to do with this case. The *Marsden* hearing is on David Kanuth."

4

mental health evaluation of defendant in county jail; defendant believed that his report would include a list of the psychiatric medication he was taking at the time. Counsel[7] responded that the issue of medication or being impaired was brought up at the hearing on August 15, 2011, and with defendant's permission, the court reviewed Dr. Knapke's report. The evaluation found defendant competent to stand trial and did not reflect that he was taking any medication. Counsel read aloud the conclusion of Dr. Knapke's report, which stated "even though the defendant claims to have a history of mental health treatment, he did not present any symptoms during this examination." Counsel also received defendant's medical records from jail dating before and after his plea (June 11, 2011, and June 23, 2011) that found defendant "is doing well and has no problem with medication or mental state." Also on the date of defendant's plea, counsel was concerned that defendant was not understanding "and I don't mean that in a lack of competency way. I mean, he was frustrated, and there was some stubbornness about [the case]." Counsel ended up talking with him for hours and had no concerns about his competency or noticed any side effects that would result from psychiatric medication. Defendant also was wearing a blue jail uniform; inmates who are taking psychiatric medication typically wear a yellow uniform, a point defendant disputes.

On the issue of moving to withdraw defendant's plea, counsel stated that the case in which he initially represented defendant (No. BA382107) had been dismissed as part of the plea agreement. Withdrawing from the plea agreement would then reinstate the charges against defendant in both cases. In counsel's professional opinion, defendant's chances in the dismissed case were "very, very bad," and defendant had no viable defense in the remaining case. He explained that defendant had two prior strikes. The prosecutor told counsel that if defendant withdrew his plea, upon his conviction the prosecutor would seek a three strikes sentence of 25 years-to-life. In response to both defendant's contention that he was on psychiatric medication at the time of his plea and counsel failed

---

[7] All references to "counsel" denote Kanuth and/or Arrechiga for ease and readability.

to withdraw his plea, counsel stated, "Based on the fact that I never observed any problems with him nor did two other public defenders, and there's no indication based on every medication that's been prescribed to him that any of these would have that side effects, and based on my own personal experience, I just didn't see any legal basis to withdraw the plea. . . ."

As to defendant's remaining complaints, trial counsel emphasized that he went through all the evidence and tried to establish a viable defense. Counsel stated that an investigator was sent to talk to the complaining witness, who alleged that defendant masturbated in his car in the grocery store parking lot. Counsel also obtained the dash cam video of the police in pursuit of defendant. Counsel spoke to defendant's parole agent, who attached a GPS device on defendant and tracked him to every location where the police chase took place. Counsel contended that "[t]hings were done. We investigated everything." For the case that was dismissed, counsel explained that a credible witness testified at the preliminary hearing and there were at least two other witnesses that were very credible. He even inquired about the DNA samples and had been told that no DNA samples were found. Counsel said he had made all necessary discovery motions and notes that no motion was necessary to be entitled to exculpatory *Brady* materials.

After listening to defendant and trial counsel, the court denied defendant's *Marsden* motion: "I do believe that the record is quite clear at this point in time. All of the complaints that are being made would be ineffective assistance of counsel as opposed to a *Marsden* hearing. I'm not finding ineffective assistance of counsel, nor am I considering it. That's not a role for me.[8] My issue here is to conduct a *Marsden* hearing. [¶] I am not finding that there was an irreconcilable conflict between the attorney and client that would result in ineffective assistance of counsel. The *Marsden* [motion] is

---

[8] At one point previously the court stated, ". . . I'm not going to address ineffective assistance of counsel. That's an issue for an appellate court."

denied." The trial court resentenced defendant to seven years four months pursuant to the plea agreement.

## DISCUSSION

**Denial of *Marsden* Motion**

Defendant contends the trial court erred in denying his *Marsden* motion and refusing to consider his ineffective assistance of counsel claims. We reject defendant's argument that the trial court should have removed counsel as being constitutionally ineffective based on counsel's statements at the *Marsden* hearing. As we read the record, counsel did the best he could in the face of a seemingly insurmountable prosecution case and an intractable defendant. The trial court had no basis for concluding at the *Marsden* hearing that defense counsel was ineffectively representing defendant, because the record was entirely to the contrary.

"When a defendant seeks new counsel on the basis that his appointed counsel is providing inadequate representation . . . , the trial court must permit the defendant to explain the basis of his contention and to relate specific instances of inadequate performance. A defendant is entitled to relief if the record clearly shows that the appointed counsel is not providing adequate representation or that defendant and counsel have become embroiled in such an irreconcilable conflict that ineffective representation is likely to result. Substitution of counsel lies within the court's discretion. The court does not abuse its discretion in denying the motion unless the defendant has shown that a failure to replace counsel would substantially impair the defendant's right to assistance of counsel. [Citation.]" (*People v. Smith* (2003) 30 Cal.4th 581, 604.) We review a ruling on a request to relieve counsel for abuse of discretion. (*People v. Marsden, supra,* 2 Cal.3d at p. 124.)

Defendant contends he was on psychiatric medication and "I was not in [the] right state of mind" when he entered his plea. In the same vein, trial counsel should have filed

7

a motion to withdraw defendant's plea. Although a criminal defendant has the right to move to withdraw his or her plea (*People v. Brown* (1986) 179 Cal.App.3d 207, 215), trial counsel is not obligated to file a meritless motion (*People v. Brown* (2009) 175 Cal.App.4th 1469, 1473 (*Brown*)). Where, as here, counsel declines to file the motion, the proper procedure is for the defendant to seek new counsel under *Marsden*. If the court concludes that counsel properly declined to file the motion, the *Marsden* request should be denied. (*Brown, supra,* at p. 1473.)

In support of his contentions, defendant states that trial counsel should have subpoenaed Dr. Knapke to testify about the side effects of his medication. However, based on the fact that that defendant's mental health evaluation and medical jail records did not report any psychiatric medication, counsel found no grounds to withdraw his plea. Dr. Knapke's evaluation details that defendant was under no such influence and nothing in the record indicates that the doctor would contradict his evaluation if subpoenaed. Counsel received and reviewed defendant's jail medical records dated before and after his plea, and reached the same conclusion. Defendant's uniform in jail was the color blue rather than a yellow, which denotes that the inmate is taking medication while in custody. Defendant's conclusory allegation that he was taking psychiatric medication runs in direct contradiction of Dr. Knapke's evaluation. Counsel "never observed any problems with him nor did two other public defenders, and there's no indication based on every medication that's been prescribed to him that any of these would have that side effects." Relying on Dr. Knapke's report and counsel's responses, the court found that defendant's claim of being under the influence of psychiatric medication was unfounded and provided no basis for the withdrawal of the plea or appointment of new counsel.

In direct response to his failure to file a motion to withdraw defendant's plea, counsel explained that withdrawal of the plea would have resulted in reopening the case against defendant (No. BA382107) that was dismissed pursuant to the plea agreement. After reviewing the case file, counsel did not see a viable defense in that case. In the *Marsden* hearing, counsel stated, "In . . . my professional opinion, very, very bad chances for [defendant]." Complaints consisting of "nothing more than tactical disagreements

8

between defendant and counsel" do not constitute a basis for substitution of appointed counsel. (*People v. Panah* (2005) 35 Cal.4th 395, 432.) Defendant also had two prior strikes and counsel was told by the prosecution that should defendant be successful at withdrawing his plea, the prosecution would "proceed on 25 years to life as a third strike." The plea agreement counsel obtained for defendant ─ only seven years four months in prison and a dismissal of another open case against defendant ─ was incredibly favorable given his exposure under the three strikes law on the two cases. Defendant has failed to make a proper showing of inadequate representation as counsel's responses during the *Marsden* hearing reveal he performed with reasonable diligence in determining whether to subpoena Dr. Knapke, and ultimately withdraw defendant's plea.

Defendant's remaining allegations are irrelevant based on the fact that the case which counsel represented defendant was dismissed pursuant to the plea agreement and only represented him in the case before the court at the sentencing hearing on October 19, 2011. Regardless, even if the case was not dismissed pursuant to the agreement, counsel explains that a credible witness testified at the preliminary hearing and there were at least two other witnesses that were very credible. Counsel even inquired about the DNA samples and had been told that no DNA samples were found. Counsel explained that he made "all the necessary discovery motions," and added that no motion was necessary to require the prosecution to produce *Brady* material. As to the case that came before the trial court, counsel notes that an investigator was sent to talk to the complaining witness, who stated that defendant masturbated in his car in the grocery store parking lot. Counsel also obtained the dash cam video of the police in pursuit of defendant. Counsel spoke to defendant's parole agent, who attached a GPS device on defendant and tracked him to every location where the police chase took place. Counsel contended that "[t]hings were done. We investigated everything." Where the evidence of a defendant's guilt is overwhelming, defense counsel is "not obliged to pursue futile lines of defense simply because defendant demanded them, and his refusal to do so did not justify his removal as counsel. (*People v. Welch* (1999) 20 Cal.4th 701, 728-729 ['Tactical disagreements

9

between the defendant and his attorney do not by themselves constitute an "irreconcilable conflict"'].)" (*People v. Panah, supra,* 35 Cal.4th at pp. 431-432.)

The court did err when stating it would not consider ineffective assistance of counsel claims at the *Marsden* hearing, for "[i]neffective assistance of counsel is the underlying plank which supports the *Marsden* rule." (*People v. Maese* (1980) 105 Cal.App.3d 710, 723.) *Marsden* requires the trial court to "permit the defendant to articulate his causes of dissatisfaction and, if any of them suggest ineffective assistance, to conduct an inquiry sufficient to ascertain whether counsel is in fact rendering effective assistance. (*Marsden, supra,* 2 Cal.3d at pp. 123-124.) In light of the fact the court considered each of defendant's five complaints with counsel and gave defendant every opportunity to explain the basis for his motion to substitute counsel, these statements by the court, standing alone, were harmless. After the court listened to defendant's complaints, it allowed counsel to respond to each in turn. The then court concluded, "I'm not finding ineffective assistance of counsel . . ." It went on to find that there was no "irreconcilable conflict between the attorney and client that would result in ineffective assistance of counsel" and denied the motion. While the court did not articulate a specific ruling on the withdrawal motion, it implicitly did so in its denial of defendant's *Marsden* motion to substitute counsel. (See *People v. Garcia* (1991) 227 Cal.App.3d 1369, 1377, fn. 3, disapproved on another ground in *People v. Smith* (1993) 6 Cal.4th 684, 692 [if a defendant does not present a colorable claim, the court may deny the motion without providing for new counsel].) Since the court found defendant has failed to make a sufficient showing of inadequate representation and thereafter denied the *Marsden* motion, the court reinstated the judgment against defendant pursuant to this court's instruction.

Applying the *Marsden* test to this case, we find no error in denying the motion for substitute counsel. The reasons stated by defendant at a *Marsden* hearing to substitute counsel do not, taking into consideration any explanation offered by counsel, show any inadequacy of counsel or irreconcilable differences. "Accordingly, we find no basis for concluding that the trial court either failed to conduct a proper *Marsden* inquiry or abused

10

its discretion in declining to substitute counsel. [Citation.]" (*People v. Fierro* (1991) 1 Cal.4th 173, 206-207.)

**Abstract of Judgment**

After the denial of defendant's *Marsden* motion and the imposition of defendant's original sentence of seven years four months in state prison, the trial court orally granted defendant 1,569 days of presentence credit, based on 433 days in custody and 1,136 days of good conduct credits. The court's minute order and the abstract of judgment state that defendant received presentence credit for 785 days in custody and 784 days of good conduct. The court orally ordered defendant to pay a $40 court security fee (§ 1465.8, subd. (a)(1)) and a $30 court facilities assessment (Gov. Code, § 70373, subd. (a)(1)), but the court's minute order and the abstract of judgment state defendant is to pay $80 in court security fees, and $60 in court facilities assessment. The trial court orally struck its prior order that defendant pay $110 in attorney fees. The court's minute order reflects that the court struck the attorney fees previously imposed, but the abstract of judgment states that defendant is to pay $110 in attorney fees. Lastly, the abstract of judgment states that the execution of sentence was imposed "at initial sentencing hearing."

The defendant first argues, and the Attorney General properly concedes, that the trial court incorrectly calculated the amount of presentence custody and conduct credits. Generally, it is the duty of the trial court to determine the periods of the defendant's custody and the number of days to be credited. (§ 2900.5, subd. (d).) When the facts are undisputed, however, a defendant's entitlement to custody credits presents a question of law for the appellate court's independent review. (*People v. Shabazz* (1985) 175 Cal.App.3d 468, 473-474.) Here, the periods of time during which defendant was in custody, and the grounds for his custody, are contained in the record. Calculation of defendant's custody credits is therefore a question of law, which we review *de novo.* (*Ibid.*)

11

With respect to custody credit, defendant argues that he is entitled to presentence credit for 219 days in custody. The Attorney General contends that defendant is actually entitled to presentence credit for 362 days in custody. It is undisputed that defendant served 219 days in jail from the date of his arrest on March 15, 2011, to the date of sentencing on October 19, 2011, and defendant was entitled to custody credit for those 219 days. (*People v. Taylor* (2004) 119 Cal.App.4th 628, 645 [the defendant was entitled to presentence custody credits for days he served in jail from the date of his arrest to date of sentencing].) However, when this court reversed the judgment against defendant on December 18, 2012, and the trial court resentenced him on May 9, 2013, defendant was entitled to presentence credit for 143 days in custody. Defendant was therefore entitled to 362 days (219 days plus 143 days in custody) of presentence custody when the trial court resentenced him on May 9, 2013. Defendant is not entitled to presentence credit for the period of time he was in prison after the trial court sentenced him in October 2011, but before this court reversed the judgment against him in December 2012. (*In re Martinez* (2003) 30 Cal.4th 29, 31 (*Martinez*) [the defendant's "prereversal prison time ought not be viewed as presentence custody, and her credit accrual should be calculated in accordance with her ultimate postsentence status"].)

With respect to conduct credit, defendant argues and Attorney General agrees that defendant is entitled to two days of credit for every four days served. (§ 4019.) As a result, when the trial court resentenced defendant, defendant was entitled to 180 days (362 days of custody credit divided by 4 equals 90.5, and 90 multiplied by 2 equals 180) of presentence good conduct. (*People v. Smith* (1989) 211 Cal.App.3d 523, 527 [for purposes of determining a defendant's entitlement to conduct credit, credits are allowed only in increments of four days, and thus "rounding up" is not permitted].) The abstract of judgment must be modified to reflect total credits of 542 days, consisting of 362 days of custody credit and 180 days of conduct credit. Calculation of the actual days of conduct credit earned by defendant from his initial sentencing on October 19, 2011, to this court's reversal on December 18, 2012, is left to the Department of Corrections and Rehabilitation. (*Martinez, supra,* 30 Cal.4th at p. 37.)

12

Defendant further contends the abstract of judgment must be amended to reflect that defendant should pay only a $40 court security fee and a $30 court facilities assessment, instead of $80 and $60, respectively. We disagree. The trial court should have ordered defendant to pay a court security fee and a court facilities assessment for each count to which he pled no contest. (§ 1465.8 ["an assessment of $40 shall be imposed on every conviction for a criminal offense"]; Gov. Code, § 70371, subd. (a)(1) ["an assessment shall be imposed on every conviction for a criminal offense . . . in the amount of $30 for each misdemeanor or felony"].) Here, defendant pled no contest in count 1 to evading an officer (Veh. Code, § 2008.2, subd. (a)) and in count 2 of indecent exposure (§ 314).

Lastly defendant argues, and the Attorney General properly concedes, the abstract of judgment should be modified to strike the entry requiring him to pay $110 in attorney fees. The trial court's oral order striking the attorney fee controls this issue. (See *People v. Mitchell* (2001) 26 Cal.4th 181, 185 ["An abstract of judgment is not the judgment of conviction; it does not control if different from the trial court's oral judgment . . ."].) We also agree with defendant that the abstract of judgment should be modified to indicate the execution of sentence occurred "at resentencing per decision on appeal," rather than "at initial sentencing hearing."

13

# DISPOSITION

The trial court is instructed to correct the abstract of judgment to properly reflect an award of 542 days of credit, consisting of 362 days of custody credit and 180 days of conduct credit, and to strike the entry requiring defendant to pay $110 in attorney fees. The abstract of judgment shall also be modified to indicate the execution of sentence occurred "at resentencing per decision on appeal."  In all other respects, the judgment is affirmed.


KRIEGLER, J.


We concur:



TURNER, P.J.



MOSK, J.

14