Filed 11/26/24

**CERTIFIED FOR PARTIAL PUBLICATION**[*]

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>GREGORY LYNN DOWDY,<br><br>        Defendant and Appellant. | A168182<br><br>(Contra Costa County Super. Ct. No. 05009804170) |

Defendant Gregory Lynn Dowdy appeals from a resentencing order under Penal Code section 1172.75.[1]  He contends the trial court abused its discretion when it denied his request to dismiss his prior strike convictions under the "Three Strikes" law pursuant to *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497 (*Romero*).  Alternatively, he argues that the order must be reversed and remanded because the court did not use its independent judgment, did not apply the criteria for dismissing enhancements set forth in section 1385, subdivision (c), and did not provide a meaningful modification to his sentence in light of the legislative intent expressed in an uncodified preamble to a different statute (see Assembly Bill No. 600 (2023–2024 Reg.

---

[*] Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of parts II A 1, II A 2, and II B.

[1] All statutory references are to the Penal Code.

1

Sess.) (Assembly Bill 600)).  In addition, Dowdy contends that remand is required to correct an error in the calculation of his presentence credits.

We will affirm the order but remand for the trial court to file amended abstracts of judgment reflecting Dowdy's custody credits up to the date of the resentencing hearing.

## I.  <u>FACTS AND PROCEDURAL HISTORY</u>

In January 1998, while on parole for robbery and attempted robbery, Dowdy entered a bank, presented a teller with "a demand note which threaten[ed] to blow her head away," received $2,600 from the teller, and left the bank.  He was positively identified in a police lineup.  In February 1998, Dowdy was arrested during a suspected drug sale.  During the arrest, he swallowed a balloon containing a large amount of a substance later determined to be heroin.  A subsequent search of his residence revealed additional heroin and drug paraphernalia as well as evidence connecting him to the robbery.

A jury convicted Dowdy of second degree robbery (§§ 211–212.5, subd. (c) (count 1)).  It also found true allegations that he served two prior prison terms (former § 667.5, subd. (b)) and had two prior serious felonies (§ 667, subd. (a)) and two prior strike convictions within the meaning of the Three Strikes law (§ 1170.12, subds. (b), (c)(2)(A)).  Dowdy thereafter pleaded guilty to a charge of possessing heroin for purposes of sale (Health & Saf. Code, § 11351 (count 2)).

In 1998, the trial court sentenced Dowdy to an aggregate term of 32 years to life in prison, as follows:  25 years to life for second degree robbery pursuant to the Three Strikes law due to his two prior serious felony convictions (§ 1170.12, subd. (c)(2)(A)); a consecutive year for each of his two prior prison terms (former § 667.5, subd. (b)); and a consecutive five years for

2

a prior serious felony (§ 667, subd. (a)).[2]  The court also imposed a concurrent upper term of four years for possession of heroin for sale (Health & Saf. Code, § 11351).

A.  Change in the Sentencing Laws

When Dowdy was sentenced, former section 667.5, subdivision (b) required trial courts to impose a one-year enhancement for each prior prison term if the defendant had not remained free of custody for at least five years. (*People v. Jennings* (2019) 42 Cal.App.5th 664, 681 (*Jennings*).)

Effective January 1, 2020, Senate Bill No. 136 (2019–2020 Reg. Sess.) (Senate Bill 136) amended section 667.5, subdivision (b), by limiting the prior prison term enhancement to prior terms for sexually violent offenses under Welfare and Institutions Code section 6600, subdivision (b).  (Stats. 2019, ch. 590, § 1; see *Jennings, supra*, 42 Cal.App.5th at p. 681.)  In 2021, the Legislature enacted Senate Bill No. 483 (2021–2022 Reg. Sess.) (Senate Bill 483).  Senate Bill 483 retroactively applied Senate Bill 136 to persons serving a term of incarceration for a repealed section 667.5, subdivision (b) sentence enhancement.  (Stats. 2021, ch. 728, § 1.)  To that end, Senate Bill 483 added former section 1171.1, which was later renumbered section 1172.75.  (Stats. 2021, ch. 728, § 3; Stats. 2022, ch. 58, § 12.)

Section 1172.75 provides that a sentence enhancement imposed for a prior prison term before 2020 pursuant to former section 667.5, subdivision (b) (unless imposed for a sexually violent offense) "is legally invalid." (§ 1172.75, subd. (a).)  Moreover, subdivision (c) of section 1172.75 provides that, when the defendant's judgment included such an enhancement, the trial

---

[2] The jury found true that he had two prior serious felonies.  Dowdy's petition for resentencing indicates that the trial court imposed punishment for only one five-year enhancement.

court "shall recall the sentence and *resentence* the defendant." (Italics added.)

Section 1172.75 details aspects of this resentencing procedure. Among other things, the statute provides that: (1) the procedure "shall result in a lesser sentence than the one originally imposed" unless the court finds by clear and convincing evidence that imposing a lesser sentence would endanger public safety (§ 1172.75, subd. (d)(1)); (2) the court "shall apply the sentencing rules of the Judicial Council and *apply any other changes in law that reduce sentences or provide for judicial discretion* so as to eliminate disparity of sentences and to promote uniformity of sentencing" (*id.* subd. (d)(2), italics added); and (3) the court "may consider postconviction factors . . . and evidence that reflects that circumstances have changed since the original sentencing so that continued incarceration is no longer in the interest of justice" (*id.* subd. (d)(3)).

B. Dowdy's Petition for Resentencing under Section 1172.75

In May 2023, Dowdy filed a petition in the trial court for resentencing pursuant to section 1172.75. In addition to asking the court to strike his prior prison term enhancements as required by section 1172.75, subdivision (a), he requested a full resentencing pursuant to section 1172.75, subdivision (c). Specifically, he asked the court to strike his prior serious felony conviction (§ 667, subd. (a)) and dismiss the corresponding five-year enhancement pursuant to section 1385. He also asked the court to dismiss his prior strike convictions pursuant to section 1385 and *Romero, supra,* 13 Cal.4th 497, to avoid the alternative sentencing scheme of the Three Strikes law. In that regard, he urged the court to apply recent amendments to section 1385 by Senate Bill No. 81 (2021-2022 Reg. Sess.) (Senate Bill 81),

4

which set forth criteria and mitigating factors for dismissing an "enhancement." (§ 1385, subd. (c)(2)(A)–(I).) In support of his petition, Dowdy listed the mitigating factors that he believed applied to him.

Citing the probation department's presentence report for his 1998 sentencing, Dowdy argued that he was neglected as a child, his father was a recovering alcoholic, he had a history of abusing substances since childhood, he became a heroin addict, and he dropped out of high school. As to his felony robbery convictions in 1981 and 1989 for which he went to prison, he was 19 and 26 years old when he committed those crimes, and while one of them may have involved the use of a gun to intimidate his victim, there were no sentencing enhancements applied for personal use of a firearm. Dowdy added that he was addressing his substance abuse issues in prison and had written a letter of apology to the teller he robbed. He also presented letters supporting him. He argued that one or both strikes should be stricken due to their age and the relatively nonviolent nature of his commitment offense, and that he no longer fell within the spirit of the Three Strikes law given his rehabilitation, reentry plan, and other mitigating factors identified in section 1385, subdivision (c)(2).

The prosecutor did not oppose Dowdy's request to strike the five-year enhancement, but it did oppose the dismissal of Dowdy's prior strikes, urging that Dowdy had not established that he fell outside the spirit of the Three Strikes law.

At the resentencing hearing, the trial court considered the parties' briefs, counsel's arguments, and the documentary evidence. Defense counsel reiterated that Dowdy fell outside the spirit of the Three Strikes law because he had suffered from a life-long addiction to drugs, did not use a firearm during the commission of his most recent offenses, had suffered childhood

5

trauma, and was approximately 19 years old at the time of his first strike offense. Defense counsel asked the court to strike the five-year enhancement, dismiss both strike priors, and resentence Dowdy to a term of two years in prison.

The trial court struck Dowdy's two prison term priors and exercised its discretion to dismiss the five-year enhancement imposed for a serious felony. It denied Dowdy's request to strike either of his prior strike convictions, concluding that the record did not show Dowdy to be outside the spirit of the Three Strikes law. The court noted that, while Dowdy provided information that he had a difficult childhood, it did not rise to the level of childhood trauma. The court also observed that Dowdy had not provided sufficient information regarding his participation in substance abuse treatment and rehabilitative programming during his incarceration. While acknowledging Dowdy's recent efforts, the court imposed an indeterminate sentence pursuant to the Three Strikes law, sentencing him to a term of 25 years to life in prison rather than the 32 years to life that was originally imposed.

Dowdy filed a timely appeal. Amended abstracts of judgment purported to state his presentence credits.

## II. DISCUSSION

### A. Denial of Dowdy's Request to Strike His Prior Strike Convictions

Dowdy contends the trial court abused its discretion by not dismissing his prior strike convictions pursuant to section 1385, subdivision (a) and *Romero*. Alternatively, he contends the court did not apply its independent judgment or consider the mitigating factors identified in section 1385, subdivision (c)(2) to provide a meaningful modification to his sentence. As explained below, his contentions are unpersuasive.

6

1. <u>No Abuse of Discretion</u>

A trial court has discretion to strike prior conviction findings under the Three Strikes law in the furtherance of justice. (§ 1385, subd. (a); *Romero, supra,* 13 Cal.4th at pp. 504, 529–530.) There is a strong presumption, however, that a sentence conforming to the Three Strikes law is "both rational and proper." (*People v. Carmony* (2004) 33 Cal.4th 367, 378 (*Carmony*).) Therefore, "a trial court will only abuse its discretion in failing to strike a prior felony conviction allegation in limited circumstances," such as where the court was unaware of its discretion or considered impermissible factors. (*Ibid.*) The circumstances must be truly extraordinary, such that "no reasonable people could disagree that the criminal falls outside the spirit of the three strikes scheme." (*Ibid.*)

In deciding whether to dismiss a prior strike conviction, the trial court must consider "whether, in light of the nature and circumstances of his present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects, the defendant may be deemed outside the [Three Strikes] scheme's spirit, in whole or in part, and hence should be treated as though he had not previously been convicted of one or more serious and/or violent felonies." (*People v. Williams* (1998) 17 Cal.4th 148, 161 (*Williams*).)

Here, the trial court was presented with information regarding the nature and circumstances of Dowdy's convictions, character, and prospects. (See *Williams, supra,* 17 Cal.4th at p. 161.) It ultimately decided that Dowdy had not shown that he was outside the spirit of the Three Strikes law. Dowdy fails to establish that the court abused its discretion.

Dowdy argues that his prior strike offenses are remote in time, he was only 19 years old when he committed his first strike offense, and that his

7

criminality was a byproduct of his substance abuse issues. The remoteness of prior strikes, however, does not mean that a defendant falls outside the spirit of the Three Strikes law. (*People v. Strong* (2001) 87 Cal.App.4th 328, 343 (*Strong*); see *Williams, supra,* 17 Cal.4th at p. 163 ["Certainly that [the defendant] happened to pass about 13 years between his prior serious and/or violent felony convictions and his present felony, and proceeded from about 20 years of age to 32, is not significant"].) To the contrary, "older strike convictions do not deserve judicial forgiveness unless the defendant has used them as a pivot point for reforming his ways." (*People v. Mayfield* (2020) 50 Cal.App.5th 1096, 1107–1108.)

It was reasonable for the trial court to conclude that Dowdy had not reformed his ways. According to the probation department's report for his 1998 sentencing, Dowdy was sentenced in 1981 to four years in state prison for robbery and paroled in April 1984. He violated his parole in 1987 and was sentenced in 1989 to 160 months in state prison for two felony robberies (one conviction for robbery and one for attempted robbery). He was paroled in July 1995 and, during the next two years, had at least 30 dirty drug tests. In June 1997, he was arrested for absconding and petty theft and returned to custody for eight months. In October 1997, he was paroled and continued to test "dirty." His overall conduct on probation was "poor." He "absconded, continued to test positive for heroin, was referred to a drug program, and continued to reoffend." As of the time of his sentencing for his felony robbery conviction in 1998, Dowdy had "exhausted all probation and parole resources, and [his] conduct should be considered highly unsuccessful." When not incarcerated, he was "generally unemployed" preceding his 1998 sentencing. (See *Williams, supra,* 17 Cal.4th at p. 163 [we cannot ignore "the fact that [the defendant] was unemployed and did not follow through in efforts to bring

8

his substance abuse problems under control"].)  Dowdy was in prison for the majority of the time between his second strike conviction and his most recent offenses, which he committed shortly after being released from prison *while he still was on parole*.  These are the marks of a career criminal, not a changed man.

Dowdy relies on *People v. Avila* (2020) 57 Cal.App.5th 1134 (*Avila*)—a case that respondent surprisingly does not address in its brief.  Nonetheless, *Avila* does not help Dowdy.  In *Avila*, the defendant was convicted of attempted robbery and attempted extortion based on demanding money from two roadside fruit vendors and "squash[ing]," "stomping on," and tossing into the dirt some of their oranges.  (*Id*. at p. 1139.)  He was sentenced to 25 years to life plus 14 years under the Three Strikes law.  (*Ibid*.)  The court of appeal reversed, concluding that "no reasonable person could agree that the sentence imposed on Avila was just."  (*Id*. at p. 1145.)  The court explained that "Avila's prior strikes were remote and committed when he was of diminished culpability based on his age, a factor the trial court erroneously concluded was inapplicable to the formulation of his sentence."  (*Ibid*.)  Further, the court observed:  "Avila's current offenses were not violent and, on the spectrum of criminal behavior, fall closer to the end of less reprehensible conduct.  Much of his criminal conduct appears to be related to his drug addiction rather than to sinister motives and falls well outside the realm of what could be considered the work of a career criminal."  (*Ibid*.)  Dowdy argues that, like Avila, his first strike was committed when he was young and of diminished culpability, his robberies involved intimidation rather than actual violence, and his life has been marred by drug abuse that underlies his criminal history.

*Avila* is inapposite. In *Avila*, the trial court erroneously concluded that it was irrelevant whether the defendant's prior strikes were remote and committed when he was of diminished culpability. Here, by contrast, there is no indication that the trial court in this case harbored any similar misconceptions. Moreover, while Avila's offenses were based on destroying fruit, Dowdy threatened a bank teller that he would blow her head off if she did not give him money. And when he was arrested for that offense, he was in the midst of a suspected drug sale and was holding enough heroin in his home to constitute possession *for sale*. Dowdy's crimes were much more dangerous and serious than Avila's crimes. Accordingly, Dowdy fails to establish an abuse of discretion.

### 2. Independent Judgment

Dowdy contends that the trial court failed to exercise its independent judgment and discretion at the resentencing hearing. He claims that the court instead "acted like an appellate court, presuming the original sentencing court's refusal in 1998 to strike one or both strikes to be correct," despite defense counsel's reminders that Dowdy was entitled to be sentenced anew. Noting that a court abuses its discretion when it is unaware of the scope of its discretion (*People v. Panozo* (2021) 59 Cal.App.5th 825, 837), Dowdy argues for reversal because it is not clear that the court would have imposed the same sentence if it knew the law. (See *People v. Salazar* (2023) 15 Cal.5th 416, 431.) We are not persuaded.

In support of his argument, Dowdy points us to the trial court's suggestion that the issue was whether the original sentence should be undone. The court stated: "[W]e're talking about imposition of a strike, which was considered at the time of sentencing by the Court then. [¶] So what I want to understand, and I'll start with [defense counsel] is: *Why*

*should I disturb that finding* that was explicitly made at that time?" (Italics added.) "I just want to see, as applied to Mr. Dowdy's circumstances, what you think would cause me to do this, noting that . . . this occurred after a trial" and "the judge had the context of all of that in front of them." "Any other special considerations you want me to take into account in revisiting the consideration of whether to strike the strike?" "And so I think it's—it's a bit thin for me to *revisit something that was considered at the time . . .* I don't think it rises to that level here." (Italics added.) "I'm not seeing a reason to *disturb* the indeterminate portion of the sentence." (Italics added.) Dowdy argues that the "question [for the trial court] was not 'why should I disturb what was done in 1998?' " but " 'what sentence should be imposed *now* given all the current criteria and all known relevant facts?' "

As a threshold matter, we must presume the trial court knew and correctly applied the law. (*People v. Gillispie* (1997) 60 Cal.App.4th 429, 434.) Although in some cases this presumption can be overcome by the record, this is not one of those cases. The court confirmed its understanding of the law when it *struck* the prison term priors and when it exercised its discretion to *strike* the prior serious felony conviction for purposes of dismissing the five-year enhancement under section 1385. Although the court could have better phrased its initial inquiry into the prior strike convictions, its statements do not seem to reflect a court that merely deferred to prior rulings or imposed an inappropriate burden on Dowdy, but one that correctly recognized that Dowdy would not be entitled to dismissal of the strikes unless circumstances were so extraordinary that "no reasonable people could disagree that the criminal falls outside the spirit of the three strikes scheme." (*Carmony, supra,* 33 Cal.4th at p. 378.) Only then would the court be able to strike the prior convictions that it previously decided not to strike. Indeed, the court

11

expressly considered factors that the original sentencing court did not.  And, immediately before sentencing Dowdy, it appeared to acknowledge that "determining whether three strikes apply is within the realm of the sentencing court on a new sentencing hearing."  Based on our review of the record in its totality, we therefore find no reversible error.

### 3.  Section 1385, Subdivision (c)

Dowdy argues that remand is needed to allow the trial court to consider "guidance of the statement of legislative intent from Assembly Bill 600 that mandates that the amendments to [] section 1385 guide the decision to strike a prior strike."  Essentially, he argues that the factors set forth in section 1385, subdivision (c) for dismissing an "enhancement" should be applied to *Romero* motions to dismiss prior strikes under section 1172.75, based on uncodified legislative intent regarding a different statute (section 1172.1) as expressed in Assembly Bill 600 (Stats. 2023, ch. 446, § 1, subds. (a)–(b)).  We join the chorus of appellate opinions rejecting these arguments.

Effective January 1, 2022, Senate Bill No. 81 (2021–2022 Reg. Sess.) amended section 1385 to specify mitigating circumstances that courts must consider when deciding whether to strike a sentence enhancement in the furtherance of justice.  (Stats. 2021, ch. 721, § 1; see § 1385, subd. (c).)  Dowdy argues that some of the mitigating circumstances set forth in section 1385, subdivision (c) apply to him.[3]

---

[3] Section 1385, subdivision (c) provides:  "(1) Notwithstanding any other law, the court shall dismiss an enhancement if it is in the furtherance of justice to do so, except if dismissal of that enhancement is prohibited by any initiative statute.  [¶]  (2) In exercising its discretion under this subdivision, the court shall consider and afford great weight to evidence offered by the defendant to prove that any of the mitigating circumstances in subparagraphs (A) to (I) are present.  Proof of the presence of one or more of these circumstances weighs greatly in favor of dismissing the enhancement,

12

It is well established, however, that section 1385, subdivision (c) applies by its terms to a sentence "enhancement," but not to a sentence derived from the alternative sentencing scheme of the Three Strikes law. (§ 1385, subd. (c); *People v. Dain* (2024) 99 Cal.App.5th 399, 410–422 (*Dain*), review granted May 29, 2024, S283924 ["Courts of Appeal have uniformly concluded that section 1385(c) does not apply to the decision whether to dismiss a prior strike conviction because the Three Strikes law is an alternative sentencing scheme, not an enhancement"]; *People v. Olay* (2023) 98 Cal.App.5th 60, 66–67 (*Olay*) [if the Legislature had wanted section 1385, subdivision (c) to apply to prior strikes as well as to enhancements as legally defined, it would have said so]; *People v. Burke* (2023) 89 Cal.App.5th 237, 244 (*Burke*) ["The plain language of subdivision (c) of section 1385 applies only to an 'enhancement,' and the Three Strikes law is not an enhancement"]; see *Dain, supra*, 99 Cal.App.5th at pp. 410–422 [agreeing with *Burke* and *Olay* and recognizing that section 1385, subdivision (c)(2)(H), which provides that a prior strike conviction over five years old is a mitigating circumstance, would directly conflict with the Three Strikes law].)

---

unless the court finds that dismissal of the enhancement would endanger public safety. 'Endanger public safety' means there is a likelihood that the dismissal of the enhancement would result in physical injury or other serious danger to others." The mitigating circumstances are: (a) application of the enhancement would result in a discriminatory racial impact; (b) multiple enhancements are alleged; (c) application of an enhancement could result in a sentence of over 20 years; (d) the current offense is connected to mental illness; (e) the current offense is connected to prior victimization or childhood trauma; (f) the current offense is not a violent felony; (g) the defendant was a juvenile when they committed the current offense or any prior offenses that trigger the enhancement; (h) the enhancement is based on a prior conviction that is over five years old; and (i) although a firearm was used in the current offense, it was inoperable or unloaded.

Dowdy nonetheless argues that we should reconsider this position because of Assembly Bill 600, which amended section 1172.1, effective January 1, 2024. (§ 1172.1, subd. (a)(1).) Section 1172.1 provides an exception to the general rule that a trial court has no jurisdiction to resentence a defendant after execution of the original sentence, by authorizing a recall and resentencing procedure that may be invoked when, for example, the Secretary of the Department of Corrections and Rehabilitation recommends resentencing. (§ 1172.1, subd. (a)(1); *People v. Codinha* (2023) 92 Cal.App.5th 976, 983–985, 986-987.) Assembly Bill 600 amended section 1172.1 to allow a court to resentence a defendant when "applicable sentencing laws at the time of original sentencing are subsequently changed by new statutory authority or case law." (§ 1172.1, subd. (a)(1), as amended by Stats. 2023, ch. 446, § 2.)

Dowdy does not rely on any part of Assembly Bill 600 that was codified in section 1172.1. Instead, he relies on language from the uncodified preamble, which states: "It is the . . . intent of the Legislature that courts have full discretion in *resentencing proceedings pursuant to Section 1172.1 of the Penal Code* to reconsider past decisions to impose prior strikes. The list of factors considered in [*Romero*] is not exhaustive. Courts should consider Section 1385 [], postconviction factors, or any other evidence that continued incarceration is no longer in the interests of justice." (Stats. 2023, ch. 446, § 1, para. (b), italics added.)

For several reasons, the uncodified legislative intent pertinent to section 1172.1 does nothing to suggest that section 1385, subdivision (c) should apply when considering whether to strike a prior conviction under the Three Strikes law, at least in the context of Dowdy's resentencing under section 1172.75.

14

First, Assembly Bill 600 amended the resentencing procedure established by section *1172.1*, which pertains to a resentencing commenced upon the court's own motion or recommendation by a party such as a correctional authority or district attorney. Dowdy was resentenced not pursuant to section 1172.1, but pursuant to a recall and resentencing mandated by section 1172.75. Because Assembly Bill 600 amended section 1172.1—but not section 1172.75—the expression of legislative intent in Assembly Bill 600, on its face, has no relevance to this case.

Nonetheless, Dowdy argues that the statement of legislative intent in Assembly Bill 600 applies to resentencing proceedings authorized by section 1172.75 too. Without authority, he claims that the Legislature mandated application of the mitigating factors in section 1385, subdivision (c) to all *Romero* motions under section 1385, subdivision (a), explicitly for resentencings under section 1172.1 and implicitly for resentencings under section 1172.5. He contends Assembly Bill 600 clarifies that the phrase "furtherance of justice" in section 1385, subdivision (a) "means a decision made after considering the mitigating factors set out in section [1385, subd. (c)]." But he fails to cite anything in Assembly Bill 600 that says this. Instead, he contends it would not make sense to have one standard for *Romero* motions in a section 1172.1 resentencing and a different standard in a section 1172.75 resentencing, noting potential equal protection "concerns."

But Dowdy fails to establish any equal protection problem or address the significance of the distinction between section 1172.1 and section 1172.75. Section 1172.1 applies where the trial court decides that resentencing is appropriate on its own motion or upon the recommendation of a correctional administrator, district attorney, or the like; section 1172.75 applies automatically and mandatorily when a sentence enhancement was imposed

15

under section 667.5, subdivision (b).  Moreover, Assembly Bill 600 explicitly limited its declaration of intent to "resentencing proceedings *pursuant to Section 1172.1 of the Penal Code*." (Stats. 2023, ch. 446, § 1, para. (b), italics added.)  Nothing in Assembly Bill 600 indicates that the declaration applies to all resentencings or all *Romero* motions.

Second, even if Assembly Bill 600 purported to state a legislative view relevant to resentencing proceedings under section 1172.75, we question whether Assembly Bill 600 suggests a legislative intent to apply section 1385, subdivision (c) to *Romero* motions in Three Strike cases.  Assembly Bill 600 expresses the Legislature's intent that trial courts have full "discretion" to reconsider past decisions to impose prior strikes, that the list of "factors" in *Romero* not be exhaustive, and that courts should consider section 1385 "or any other evidence that continued incarceration is no longer in the interests of justice." (Stats. 2023, ch. 446, § 1, para. (b), italics added.)  But it does not say that the "great weight" afforded to mitigating circumstances under section 1385, subdivision (c) should be applied in all *Romero* motions.  Nor does it say that the term "enhancement" as used in section 1385, subdivision (c) includes a prior strike under the Three Strike laws, which contravenes what courts of appeal have consistently held for years.

Indeed, Division Two of this court rejected the argument that Assembly Bill 600 reflected an intent to apply the section 1385, subdivision (c) mitigating factors to *Romero* motions.  (*Dain*, *supra*, 99 Cal.App.5th at p. 412.)  As *Dain* put it, an uncodified declaration in legislation amending a different statute does not demonstrate that the Legislature intended the term "enhancement" as used in section 1385, subdivision (c), to refer to something other than its well-established legal meaning.  (*Ibid*.; *Olay*, *supra*, 98 Cal.App.5th at p. 67 ["we are skeptical the Legislature would have expressed

16

an intent to reject the well-established legal meaning of 'enhancement' in such a roundabout manner by obliquely referencing 'juvenile adjudications' as one of the relevant mitigating circumstances"].)

Undaunted, Dowdy argues that *Dain* is "wrongly decided" and that his argument is not that Assembly Bill 600 changed the meaning of "enhancement" in section 1385, subdivision (c), but that Assembly Bill 600 defined "furtherance of justice" such that the statutes employing that phrase—including section 1385, subdivision (a)—now compel the trial court to consider all mitigating evidence including the factors set forth in section 1385, subdivision (c), in presumably every resentencing scenario. But this strains credulity even more. We cannot fathom that our Legislature would introduce such a sweeping change by stating merely that it applies to "[s]ection 1172.1" and then electing not to codify it in any of the statutes it was to affect.

Third, even if the Legislature had harbored such an intent in drafting the uncodified preamble to section 1172.1, as a matter of law, Assembly Bill 600 cannot apply the section 1385, subdivision (c) mitigating factors to *Romero* motions in a way that alters the operation of the Three Strikes law. As *Dain* observed, the Three Strikes law may be amended only " 'by statute passed in each house by rollcall vote entered in the journal, two-thirds of the membership concurring.' " (*Dain*, *supra*, 99 Cal.App.5th at p. 412.) And application of section 1385, subdivision (c) to prior strike convictions would indeed operate in direct conflict with the Three Strikes law. For example, the Three Strikes law establishes that "the length of time between the prior serious or violent felony conviction and the current felony conviction *shall not* affect the imposition of sentence." (§ 667, subd. (c)(3), italics added.) Thus, the remoteness of a prior conviction, "by itself, cannot be a basis for

17

dismissing a prior strike conviction." (*Dain*, at pp. 415–416; see *Williams*, *supra*, 17 Cal.4th at p. 163; *Strong, supra,* 87 Cal.App.4th at p. 342 [section 667, subdivision (c)(3) "suggests, at a minimum, that remoteness alone cannot take a defendant outside the spirit of the very law that expressly rejects remoteness as a basis for avoiding the law"].) Because remoteness cannot be the sole basis for dismissing a prior strike conviction, it certainly cannot, by itself, establish a presumption in favor of dismissal of a prior strike conviction. Section 1385, subdivision (c), however, does purport to establish a presumption in favor of dismissal based solely on the remoteness of a prior conviction. (See § 1385, subd. (c)(2) ["Proof of the presence of one or more of these circumstances weighs greatly in favor of dismissing the enhancement"], subd. (c)(2)(H) [the fact that the prior conviction "is over five years old" is a mitigating circumstance].) Because neither Senate Bill 81 (which added the mitigating factors in section 1385, subdivision (c)) nor Assembly Bill 600 (which includes the Legislative declaration on which Dowdy relies) passed by two-thirds of the membership (Sen. Daily J. (Sept. 9. 2021) p. 2553 [Sen. Bill 81]; Assem. Daily J. (Sept. 8, 2021) p. 2941 [Sen. Bill 81]; Sen. Daily J. (Sept. 13, 2023) p. 2704 [Assem. Bill 600]; Assem. Daily J. (Sept. 13. 2023) p. 3470 [Assem. Bill 600]), we find that neither has amended the Three Strikes Law in the manner proposed by Dowdy.

Finally, even if Dowdy were right, and the uncodified legislative intent in Assembly Bill 600 *was* sufficient to require the application of section 1385, subdivision (c) and its mitigating factors to *Romero* motions under section 1172.75, Dowdy does not identify any mitigating circumstance in section 1385, subdivision (c), that the trial court refused to consider in this case. For each of these reasons, Dowdy fails to establish error.

18

### 4. Meaningful Modification

Dowdy contends that the superior court "should be ordered to strike at least one of [his] prior strikes to comply with the statement of legislative intent from Assembly Bill 600 that resentencing result in a meaningful modification." Assembly Bill 600 states in this regard: "It is the intent of the Legislature that, in cases *where the judge concludes that recall and resentencing pursuant to Section 1172.1* [] is appropriate, the resentencing result in a *meaningful modification.* 'Meaningful modification' means it will cause some actual change in the person's circumstances, including, but not limited to, immediate release, earlier release, and newly acquired entitlement to review by the Board of Parole Hearings or *the advancement of eligibility for a parole hearing.*" (Stats. 2023, ch. 446 § 1, subd. (d), italics added.)

Dowdy's argument lacks merit. First, as mentioned above, Assembly Bill 600 amended the resentencing procedure commenced under section 1172.1, not the resentencing procedure commenced by Dowdy under section 1172.75.

Second, Dowdy did obtain a meaningful modification to his sentence. Section 1172.75 states that resentencing should generally result in a lesser sentence. Dowdy received a lesser sentence, because he was originally sentenced to 32 years to life but was resentenced to 25 years to life. Moreover, the reduction from 32 years to 25 years reflected "the advancement of eligibility for a parole hearing" as stated in Assembly Bill 600.

Dowdy argues that this modification resulted in no actual change in his circumstances. He asserts that he was already in the parole process, which had not advanced, and with good time credit he may have already served the 32-year portion of his indeterminate sentence. He argues that the only way

19

for him to receive a meaningful modification is to dismiss one of the prior strike convictions and resentence him as a "second striker."

Dowdy's argument is untenable. If, in a resentencing under section 1172.5, the only meaningful modification for a third striker who has begun the parole process was the dismissal of a prior strike conviction, then any such third striker who had a prior prison term enhancement would not just obtain relief from the enhancement, he would *automatically* obtain relief from the Three Strikes law and be released from prison—without a parole board determination of public safety or even an analysis of public safety under section 1385, subdivision (c). This could not have been what the Legislature intended in its uncodified preamble to section 1172.1. And even if the Legislature had intended such an outcome, it would run afoul of the Three Strikes law adopted by California voters—which "carefully circumscribes the trial court's power to depart from" the sentencing norm established by that law and establishes only "limited" circumstances in which a strike may be dismissed. (*Carmony*, *supra*, 33 Cal.4th at p. 378.) Dowdy fails to establish error or any basis for remand.

B. Presentence Custody Credits

Dowdy contends that remand is required to correct his presentence custody credits. Respondent agrees that the trial court must prepare amended abstracts of judgment that set forth the actual days Dowdy spent in the custody of the California Department of Corrections and Rehabilitation (CDCR) from the date of his initial sentencing to the date of his resentencing hearing in May 2023. We will so order.

After the conclusion of the resentencing hearing, amended abstracts of judgment for count 1 (robbery) and count 2 (possession of heroin for sale) were filed on June 20, 2023. Each abstract of judgment included a

calculation of 8,924 total credits, comprised of 8,722 actual days and 202 days as section 4019 credits. On October 9, 2023, additional amended abstracts of judgment were filed for counts 1 and 2, specifying that Dowdy has 210 actual credits and 104 credits pursuant to section 4019, without specifying a total credit calculation.

As set forth in section 2900.1, "[w]here a defendant has served any portion of his sentence under a commitment based upon a judgment which . . . is subsequently declared invalid or which is modified during the term of imprisonment, such time shall be credited upon any subsequent sentence he may receive upon a new commitment for the same criminal act or acts." The sentencing court must credit the defendant "with all actual days he had spent in custody, whether in jail or prison, up to that time." (*People v. Buckhalter* (2001) 26 Cal.4th 20, 37 (*Buckhalter*); §§ 2900.1, 2900.5.) The updated total of credits must then be added to the abstract of judgment. (*People v. Phoenix* (2014) 231 Cal.App.4th 1119, 1125, 1130; § 2900.5.)

Because Dowdy's conviction was not reversed, he was not eligible for additional presentence conduct credits (see § 4019) while awaiting resentencing. (*People v. Johnson* (2004) 32 Cal.4th 260, 268.) Conduct credits he earned during his prison sentence (§§ 2930–2935) are the responsibility of the CDCR and need not be added to the updated abstract. (*In re Martinez* (2003) 30 Cal.4th 29, 37; Cal. Const., art. I, § 32, subd. (a)(2).)

But as respondent notes, the trial court was required to calculate Dowdy's credit for all actual days spent in custody, whether in jail or prison, up to the date of the resentencing hearing. (*Buckhalter*, *supra*, 26 Cal.4th at p. 37.) The amended abstracts of judgment filed on October 9, 2023, do not include that calculation. In light of the parties' agreement, we will order the court to prepare amended abstracts of judgment stating not just the

presentence credits awarded as of the initial sentencing date, but also the actual days Dowdy spent in CDCR custody after the initial sentencing date to the date of his resentencing hearing in May 2023.

## III.  DISPOSITION

The order is affirmed.  The matter is remanded to the trial court to prepare amended abstracts of judgment that include the actual days Dowdy spent in the custody of the California Department of Corrections and Rehabilitation after the time of his initial sentencing to the date of his resentencing hearing.



CHOU, J.


We concur.


JACKSON, P. J.



SIMONS, J.



(A168182 – *People v. Dowdy*)


22

Trial Court:  Superior Court of California, County of Contra Costa

Trial Judge:  Hon. Julia Campins

Counsel:  Steven S. Lubliner, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Jeffrey M. Laurence, Assistant Attorney General, Eric D. Share and Benjamin Bonnello, Deputy Attorneys General, for Plaintiff and Respondent.