Filed 12/26/24  P. v. Rodgers CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>LARRY LEE RODGERS,<br><br>    Defendant and Appellant. | H050926<br>(Santa Clara County<br> Super. Ct. No. C1765036) |

Defendant Larry Lee Rodgers appeals the judgment imposed after this court reversed and remanded his case to the trial court.  He asserts the trial court incorrectly calculated his conduct credits.  He also contends the court erred when it issued a 10-year protective order under Penal Code section 136.2.[1]  The Attorney General argues the analytic framework employed by the trial court to calculate credits was correct under the California Supreme Court's opinion in *In re Martinez* (2003) 30 Cal.4th 29 (*Martinez*), but the court erred in its calculation.  He further concedes the imposition of a 10-year protective order was improper and its term should be reduced to reflect the date of the original judgment in the case.

_____

[1] Undesignated statutory references are to the Penal Code.  We previously have granted Rodgers's request for judicial notice of this court's opinions in *People v Rodgers* (Oct. 28, 2022, mod. Nov. 23, 2022, H047232) [nonpub. opn.]) and *People v. Rodgers* (Oct. 28, 2012, H047345) [nonpub. opn.]).

For the reasons set forth below, we determine the trial court erred in its reliance on *Martinez* and erred in its calculation of the credits. We also accept the Attorney General's concession that the protective order should be modified to reflect the original judgment date. We will reverse the judgment and remand the matter to the trial court for a new order on conduct credits, modification of the term of the protective order, and other minor corrections to the abstract of judgment.

## I. PROCEDURAL AND SENTENCING BACKGROUND

This appeal arises from the sentence imposed in two separate Santa Clara County Superior Court dockets.[2]

In case number C1765036 ("case 1") Rodgers entered a no contest plea, pursuant to a plea agreement, to six counts: kidnapping (§ 207, subd. (a); count 1), assault with a firearm (§ 245, subd. (a)(2); counts 2 and 3), criminal threats (§ 422; counts 4 and 5), and vehicle theft (Veh. Code, § 10851, subd. (a); count 6). He also admitted firearm enhancements (§§ 12022, subd. (a)(1), 12022.5, subd. (a), 12022.53, subd. (b)), a prison prior (§ 667.5, subd. (b)), and an enhancement for committing offenses while being out on bail in another case (§ 12022.1). In case number 216392 ("case 2"), Rodgers entered a no contest plea, pursuant to a plea agreement, to three counts of transportation of cocaine base (Health & Saf. Code, § 11352) and one count of possession for sale of methamphetamine (Health & Saf. Code, § 11378).

Rodgers was sentenced on both cases on March 4, 2019. In case 1, the court sentenced Rodgers to nine years in state prison, and it awarded him credit for 615 actual pretrial days served plus 92 good conduct credit days, for a total of 707 days. The court also issued a 10-year protective order restricting Rodgers from any knowing contact with the victim. In case 2, the court imposed a four-year, eight-month sentence to run consecutive to the term imposed in the other case. The trial court awarded three days of

_____

[2] We omit a summary of the underlying facts of the case because they are not relevant to the appeal before us.

presentence credit in case 2. The aggregate prison term on the two cases was 13 years, eight months.

Rodgers filed a notice of appeal in each case. In case 1, Rodgers successfully appealed the denial of his suppression motion. (*People v Rodgers* (Oct. 28, 2022, mod. Nov. 23, 2022, H047232) [nonpub. opn.].) This court reversed and remanded the matter, directing the trial court to vacate the portion of its prior order denying the motion to suppress and enter a new order granting the motion to suppress evidence seized in a search of a vehicle and backpack. If Rodgers elected to withdraw his earlier no contest plea in case 1 within 30 days after the opinion became final, the trial court was to vacate his plea and reinstate the charges, and proceed to trial. If Rodgers did not move to vacate his plea, the trial court was to reinstate the original judgment. Meanwhile, appellate counsel in case 2 filed a brief under *People v. Wende* (1979) 25 Cal.3d 436, after which this court affirmed the judgment. (*People v. Rodgers* (Oct. 28, 2012, H047345) [nonpub. opn].)

After the superior court vacated its order denying the suppression motion and entered a new order granting the motion, Rodgers elected to vacate his no contest plea in case 1. He then entered a no contest plea to the charged offenses in case 1 and admitted the enhancements and allegations in exchange for an agreed-upon term of seven years in state prison. The court dismissed the prison prior based on a change in the law. On March 27, 2023, consistent with the plea agreement, the court sentenced Rodgers to seven years in prison. The court also issued a 10-year protective order under section 136.2. In case 2, the court reimposed the four-year, eight-month sentence to run consecutive to the sentence imposed in case 1, resulting in an aggregate term of 11 years, eight months. Between the time that this court issued the remittitur in case 1 on December 30, 2022, and the date he withdrew his plea in that matter, Rodgers was at CDCR serving the originally imposed sentence on both case 1 and case 2.

At the post-remand sentencing hearing, Rodgers objected to the formula used by the probation office to calculate conduct credits for good behavior. The probation department recommended that the credits be calculated according to the formula set forth in *Martinez, supra,* 30 Cal.4th 29. Rodgers argued he should be awarded more postsentence goodtime/worktime credits by CDCR and fewer presentence credits awarded by the trial court under section 4019 than was recommended by the probation department. Rodgers contended the trial court should calculate all of his actual credits, but only those presentence conduct credits to which he was entitled commencing with the date he first was held in custody until the date of his original sentencing. He asserted CDCR should be responsible for awarding conduct credits after the date of his original sentencing because he was at all times thereafter serving a consecutive state prison sentence in case 2.

The court followed the recommendation of the probation department. Consistent with the framework outlined in *Martinez*, the probation department divided the allocation of actual and conduct credits in case 1 into three phases. Phase one commenced with the date of Rodgers's arrest on May 30, 2017, until his original sentence on March 4, 2019, with 60 days deducted for a sentence imposed in an unrelated case (615 actual days plus 92 days conduct credits under section 2933.1, for a total of 707 days). Phase two commenced from the date following the original sentencing date of March 5, 2019, until October 28, 2022, the date this court filed its opinion in case 1 (1334 actual days, with CDCR to calculate any conduct credits). Phase three commenced from October 29, 2022, the date after this court issued its opinion in case 1, until the March 27, 2023 resentencing date (150 actual days plus conduct credits under section 2933.1, for a total of 172 days). As to case 1, the court awarded a total of 2,099 actual days and 114 conduct days, for a total of 2,213 days. The trial court directed CDCR to calculate good time/work time credits for the period from Rodgers's original sentencing date to the filing date of the appellate opinion reversing the judgment, as well as the for the period after the

resentencing. The court awarded three days of actual credit for case 2, but did not merge those credits with those in case 1, although the sentence imposed in case 2 was to run

Rodgers timely appealed.

## II. ANALYSIS

### A. Method for Calculating Credits at Resentencing

Rodgers argues that the court incorrectly calculated his conduct credits after remand. Specifically, he contends that CDCR was responsible for the calculation of all conduct credits commencing with the date of his original sentencing in case 1 because even though the judgment in case 1 had been reversed, he was thereafter at all times serving a consecutive state prison sentence in case 2 as part of the original judgment and thus never returned to the status of a pretrial detainee before resentencing. The Attorney General counters that the court properly analyzed the basic principles of conduct credit allocation under *Martinez*, but applied those principles incorrectly. As a result, the matter should be remanded to the trial court for recalculation of credits. We conclude based on Rodgers's continued confinement in case 2, the trial court improperly determined conduct credits because the calculation must be left to CDCR.

At sentencing, Rodgers was entitled to have the trial court calculate the actual days he had served in custody, and to a determination of conduct credits. " 'Where a defendant has served any portion of his sentence under a commitment based on a judgment which judgment is subsequently declared invalid,' the trial court must calculate the actual time the defendant has already served and credit that time against 'any subsequent sentence he may receive upon a new commitment for the same criminal act or acts.' " (*People v. Donan* (2004) 117 Cal.App.4th 784, 789 (*Donan*), quoting § 2900.1.) "Defendants sentenced to prison for criminal conduct are entitled to credit against their terms for all actual days of presentence and postsentence custody (§§ 2900, subd. (c), 2900.5, subds. (a), (b))." (*People v. Cooper* (2002) 27 Cal.4th 38, 40, fn. omitted (*Cooper*).)

5

"The Penal Code provides that inmates in county jails and state prisons may have their sentences reduced as a reward for their conduct, including work and good behavior. The rate at which inmates accrue credit depends on numerous factors, including whether the confinement is presentence or postsentence." (*Martinez, supra,* 30 Cal.4th at p. 31.) "Defendants detained in a county jail, or other equivalent specified facility, 'prior to the imposition of sentence,' may also be eligible for presentence good behavior/worktime credits (collectively referred to as conduct credits) of up to two days for every four days of actual custody. (§ 4019, subds. (a)(4), (b), (c), (e), (f).)" (*Cooper, supra*, 27 Cal.4th at p. 40.)[3] While in prison custody, a defendant can earn postsentence good behavior/worktime credits under sections 2930 *et seq.*, or prison worktime credits under section 2933, to shorten the period of incarceration. (*Ibid*.) The sentencing court is required to calculate the exact number of days the defendant has spent in custody, as well as any presentence conduct credits, which must be reflected in the abstract of judgment. (§ 2900.5, subd. (d).) Once a defendant has been sentenced to state prison, it is CDCR's responsibility to determine postsentence good behavior/worktime credits. "The agency to which the defendant is committed, not the trial court, has the responsibility to calculate and apply any custody credits that have accrued between the imposition of sentence and physical delivery of the defendant to the agency. (§ 2900.5, subd. (e).)" (*People v. Buckhalter* (2001) 26 Cal.4th 20, 31 (*Buckhalter*).)

Section 2900.1 provides that if a defendant "has served any portion of his sentence under a commitment based upon a judgment which judgment is subsequently declared invalid or which is modified during the term of imprisonment, such time shall be credited

---

[3] We note that section 2933.1, subdivision (c), limits the authorized award of presentence conduct credits to a maximum of 15 percent of a defendant's actual period of presentence confinement for persons convicted of specified felonies, including kidnapping. Rodgers was convicted in case 1 of kidnapping in count 1 and the trial court here properly recognized the limitation on the award of presentence conduct credits under section 2933.1. (See *People v. Reeves* (2005) 35 Cal.4th 765, 772-773.)

upon any subsequent sentence he may receive upon a new commitment for the same criminal act or acts." Thus, when a prison term "already in progress is modified as the result of an appellate sentence remand, the sentencing court must recalculate and credit against the modified sentence all actual time the defendant has already served, whether in jail or prison, and whether before or since he was originally committed and delivered to prison custody." (*Buckhalter*, *supra*, 26 Cal.4th at p. 29, italics omitted.) However, the characterization of conduct credits, whether presentence or postsentence, is not clearly described in the statutes. "The sentence-credit statutes do not define the phrases 'prior to sentencing' (§ 2900.5, subd. (d)), and 'prior to the imposition of sentence' (§ 4019, subd. (a)(4) . . . ." (*Id*. at p. 32.)

The question of how the complex statutory sentence-credit scheme should be applied when a case is remanded after appeal has been addressed, at least in part, by the California Supreme Court in *Buckhalter, Martinez*, and *People v. Johnson* (2004) 32 Cal.4th 260 (*Johnson*).

In *Buckhalter*, *supra*, the defendant was convicted of multiple felonies committed on a single occasion. The trial court sentenced the defendant to three consecutive indeterminate life terms in state prison under the "Three Strikes" law (§ 1170.12), and he began serving his sentence. Subsequently, the Court of Appeal remanded the matter on sentencing issues only. At resentencing, the trial court awarded the defendant the custody credits, including jail work and conduct credits, that he had earned up to the time he was originally sentenced but refused to recalculate the credit total. (*Buckhalter, supra*, 26 Cal.4th at p. 22.) The defendant appealed arguing that the trial court erred in refusing to award additional conduct credits. The Supreme Court concluded that "a convicted felon once sentenced, committed, and delivered to prison is not restored to presentence status, for purposes of the sentence-credit statutes, by virtue of a limited appellate remand for correction of sentencing errors. Instead, he remains 'imprisoned' (§ 2901) in the custody of the Director [of Corrections] 'until duly released according to law' (*ibid.*),

7

even while temporarily confined away from prison to permit his appearance in the remand proceedings.  Thus, he cannot earn good behavior credits under the formula specifically applicable to persons detained in a local facility, or under equivalent circumstances elsewhere, 'prior to the imposition of sentence' for a felony.  (§ 4019, subds. (a)(4), (b), (c), (e), (f); . . .)  Instead, any credits beyond *actual custody time* may be earned, if at all, only under the so-called worktime system separately applicable to convicted felons serving their sentences in prison.  (§§ 2930 et seq., 2933.)"  (*Buckhalter, supra,* at p. 23; accord, *Johnson*, *supra*, 32 Cal.4th at pp. 266-267.)  The court limited its holding to those defendants remanded "solely for correction of a sentence already in progress," and refused to "consider the proper credit treatment of one who spends time in custody after his *convictions* have been reversed on appeal, thus setting the entire matter at large for retrial."  (*Buckhalter,* at pp. 33, 40, fn. 10.)

Subsequently in *Martinez*, the Supreme Court again considered the conduct credit issue, this time in a case where the judgment had been reversed.  Martinez's conviction was reversed on habeas corpus review based on a claim of ineffective assistance of counsel.  She subsequently pleaded guilty to the charge and was resentenced.  On appeal, she asserted that the trial court did not correctly award her conduct credits for the time from her initial sentencing until the reversal of her conviction.  In considering how to properly calculate conduct credits for that period, the California Supreme Court designated "four distinct phases" of the case history:  "Phase I is the period from the initial arrest to the initial sentencing . . . .  Phase II is the period from the initial sentencing to the reversal . . . .  Phase III is the period from the reversal to the second sentencing . . ., and phase IV is the period after the second and final sentencing." (*Martinez*, *supra*, 30 Cal.4th at p. 32.)

In *Martinez*, the parties stipulated that Martinez should accrue credits as a presentence inmate for phases I and III, under section 4019, but disagreed in the characterization of phase II, the period from the initial sentencing to the reversal.

8

(*Martinez*, *supra*, 30 Cal.4th at p. 32.) Martinez argued "her state prison confinement prior to the reversal must be characterized as presentence for credit accrual purposes." (*Id.* at p. 31.) The Supreme Court disagreed, concluding that from the initial sentencing to the reversal of judgment, Martinez was not in the same position as a pretrial detainee but was instead a prison inmate. (*Id.* at p. 36.) Because Martinez pleaded guilty after her case was remanded by the appellate court, the Court reasoned her "subsequent plea confirms that her initial conviction, although procedurally invalid, was not without legal basis. On the contrary, she pleaded guilty to the charged offense, and thus does not warrant disparate treatment from a petitioner who initially received an error-free judgment." (*Id.* at pp. 36-37.) Accordingly, the Supreme Court ruled that Martinez's confinement during phase II, should be characterized as time to be calculated by CDCR authorities under the postsentence credit statutes. (*Id.* at p. 37.) Thus, the Court concluded that Martinez was entitled to presentence credits on Phases I and III and postsentence credits on Phases II and IV.

The Supreme Court again considered the categorization of conduct credits in *Johnson.* In that case the defendant was found guilty of two counts of vehicle theft and the trial court sentenced him to state prison. The trial court then recalled defendant's sentence and resentenced him to state prison. The trial court refused to grant defendant section 4019 conduct credits for the period between the original sentencing and resentencing after recall, technically Phases II and III. The Court concluded that the trial court's recall of defendant's sentence was a modification of a sentence in progress pursuant to section 2900.1, "similar to the limited remand in *Buckhalter* and therefore he was not entitled to section 4019 credits. [Citation.]." (*Donan, supra,* 117 Cal.App.4th at pp. 791-792.)

Here, unlike the defendants in *Buckhalter, Martinez* and *Johnson*, who sought the application of section 4019 credits to either Phases II or III, Rodgers argues that his Phase III credits, that is, the period from the reversal of the judgment on appeal to the time of

9

resentencing, should be calculated by CDCR pursuant to section 2933.1, subdivision (a), not by the trial court pursuant to sections 4019 and 2933.1(c). The parties do not disagree that Rodgers was entitled to presentence conduct credits under section 4019 (limited only by section 2933.1, subd. (c)) during phase I, that is, for the time from arrest to his original sentencing in case 1. Nor do they disagree that Rodgers was entitled to postsentence good behavior/worktime credits to be awarded by CDCR as a prison inmate during phases II and IV, that is, for the time from the original sentencing to the reversal of the judgment, and for the time after resentencing. They also agree that the trial court erred by determining that the operative date of "reversal" under phase II was the date the opinion was filed rather than the date the remittitur issued, i.e., December 30, 2022. (*Donan*, *supra*, 117 Cal.App.4th at p. 789; *People v. Saunoa* (2006) 139 Cal.App.4th 870, 872.)[4] The only disputed issue in this case is the characterization of phase III credits.

Because the court in *Martinez* accepted the parties' stipulation that defendant was entitled to precustody credits for phase III custody and here the parties disagree over the type of conduct credits that should be allocated for phase III, *Martinez* is not dispositive. Therefore, the trial court erred in relying on *Martinez* in its determination that the time Rodgers served between reversal and resentencing should be deemed presentence time. *Martinez* simply did not address any issues related to phase III in any substantive way. Even if the acceptance of the stipulation is considered an approval of the premise, the facts of this case distinguish it from *Martinez*.

Rodgers correctly observes that in *Martinez*, the defendant's single case was reversed by the appellate court after a successful habeas petition. Rodgers argues that because his case involves one sentencing on two cases, and because he was continuously

_____

[4] Rodgers contends that the trial court wholly erred by applying the *Martinez* analysis to his case, but agrees with the Attorney General that, were *Martinez* to apply, the trial court erred by deeming case 1 "reversed" on the date this court's opinion was filed instead of the date the remittitur issued.

serving a prison term by virtue of the consecutive sentence imposed in case 2, he continued to be a prison inmate on the originally imposed sentence. Consecutive terms are considered "one, single sentence." (See *People v. Nunez* (2017) 167 Cal.App.4th 761, 766.) That Rodgers was still serving his sentence on case 2 after the remittitur from this court in case 1 is made apparent by the abstract of judgment issued by the court at his resentencing, which shows that his sentence on case 2 was executed at the time of the initial sentencing, while the sentence on case 1 was executed, as modified, at the time of his resentencing. Because case 2 was not overturned on appeal, Rodgers is correct that he continued to serve the term on his sentence.

Rodgers further observes the disposition of his appeal, which reversed the trial court's order denying a suppression motion, provided him with the option to take no action to withdraw his plea. Had he not withdrawn his plea, by the terms of that disposition, the trial court would have been required to reimpose the original judgment against him. Conversely, even if after reversal and remand, the district attorney had decided to drop the charges in case 1, Rodgers would have continued to serve the consecutive sentence on case 2 and would have continued to be in the Director's custody. (*Buckhalter, supra*, 26 Cal.4th at pp. 29-30, 33, 34.) Rodgers thus contends that, like Buckhalter, he was "never restored to the status of pretrial detainee," and was in the constructive custody of prison authorities, and subject to CDCR's postsentence credit awards. He correctly reasons that, consistent with *Buckhalter*, the trial court should have characterized his time in custody from the original date of sentencing in cases 1 and 2 (i.e., both phases II and III in case 1) as postsentence time for which CDCR should calculate conduct credits under the postsentence credit system. The Court in *Johnson* did as much when it refused to consider any of the time between the original sentencing and resentencing as presentence time. (*Johnson, supra,* 32 Cal.4th at p. 267.) We similarly conclude that the time between remand and resentencing cannot be construed as

11

presentence time since Rodgers continued to serve his sentence on the consecutive term in case 2.

Even the court in *Martinez*, although evaluating phase II time, found the fact that defendant pled guilty after the case was reversed critical to its determination that the conviction was not without legal basis, so the time served between original sentencing and reversal should be considered postsentence time. (*Martinez*, *supra*, 30 Cal.4th at pp. 36-37.) This reasoning should apply equally to phase III where a defendant continues to serve a legally sound consecutive sentence at the time the conviction on case is overturned.

Although we conclude that the resentencing court erred when it determined the phase III period from the date of this court's reversal of Rodgers's judgment to his resentencing date was presentence time, we recognize the challenge posed by the application of the credits statutes to post-appeal sentencing. "When considering the issue presented, we must admonish at the outset that application of the complex statutory sentence-credit system to individual situations ' "is likely to produce some incongruous results and arguable unfairness when compared to a theoretical state of perfect and equal justice. [Because] there is no simple or universal formula to solve all presentence credit issues, our aim [must be] to provide . . . a construction [of the statutory scheme] which is faithful to its language, which produces fair and reasonable results in a majority of cases, and which can be readily understood and applied by trial courts." ' " (*Buckhalter*, *supra*, 26 Cal.4th at pp. 28-29, quoting *People v. Bruner* (1995) 9 Cal.4th 1178, 1195, quoting *In re Joyner* (1989) 48 Cal.3d 487, 495.)

We are persuaded that the framework laid out by the Supreme Court cases discussed *ante*, compels us to conclude that the time Rodgers served during phase III is subject to the postsentence credit statutes. As a result, CDCR must calculate the postsentence credits owed to Rodgers for phases II, III and IV, that is, the period from the imposition of the original sentence forward. The distinguishing factor of this case, that

Rodgers remained in the custody of the CDCR on the consecutive sentence in case 2, leads us to this conclusion. However, we are mindful that in a case where there is no consecutive term on another case being served, the outcome may be different. We will remand to the trial court for the court to recalculate Rodgers's credits in accordance with this decision.

## B. Duration of the Protective Order

Rodgers next contends that the court at resentencing erred when it issued a 10-year protective order under section 136.2, instead of reducing the term for the protective order to reflect the fact that a 10-year protective order had been in effect since his original sentencing four years earlier. The Attorney General correctly concedes this issue.[5]

Section 136.2, subdivision (i)(1) provides that a protective order issued in a case involving domestic violence "may be valid for up to 10 years." Here, Rodgers had been in a dating relationship with the victim in case 1. At the original sentencing, on March 4, 2019, the court imposed a 10-year protective order under this provision. The protective order had thus been in effect from that date until he withdrew his plea on February 24, 2023. At resentencing, the court again issued a 10-year protective order against the victim of case 1.

When the court resentenced Rodgers on March 27, 2023, its authority to reissue the protective order was restricted by the plain language of section 136.2, subdivision (i) (1), which states that such orders "may be valid for up to 10 years . . . ." The parties agree that at the time he withdrew his plea, the protective order had been in effect for three years, 11 months, and 20 days. The court exceeded its authority under section 136.2, subdivision (i)(1) by imposing the 10-year term for the protective order to be

---

[5] Rodgers acknowledges that he failed to object to imposition of the 10-year protective order at resentencing. The Attorney General does not assert forfeiture of this issue because it concedes that the resentencing court imposed an order that exceeded the 10-year statutory time limit, which was an unauthorized sentence. We therefore address the issue here. (*People v. Ponce* (2009) 173 Cal.App.4th 378, 382.)

13

effective as of the date of the resentencing hearing rather than reducing its duration to reflect the time it had been in effect since the original sentencing date on case 1.  We will therefore order the court on remand to modify the expiration date of the protective order to reflect that it went into effect on the original sentencing date (March 4, 2019), and is valid for "up to 10 years" from that date.  (§ 136.2, subd. (i)(1).)

## C.  Correction of Clerical Errors in the Abstract of Judgment

Rodgers points to numerous clerical errors in the abstract of judgment from the resentencing, including that it lists the wrong date for the proceedings, the wrong department number, and incorrect names for the sentencing judge, probation officer, courtroom deputy, and court reporter.  The Attorney General agrees that these entries in the abstract of judgment are erroneous.  We will direct the superior court upon remand to fix the clerical errors.  (See *People v. Mitchell* (2001) 26 Cal.4th 181, 185 [appellate court may order corrections of clerical errors in abstracts of judgment].)

## III.  DISPOSITION

The judgment is reversed.  The matter is remanded only for 1) recalculation of actual and conduct credits consistent with this opinion, 2) modification of the expiration date of the protective order, and 3) correction of clerical errors in the abstract of judgment.

_____

Greenwood, P. J.


WE CONCUR:


_____

Bamattre-Manoukian, J.


_____

Danner, J.


People v. Rodgers
H050926